**BROOKTREE
CORPORATION, Plaintiff,**

v.

**ADVANCED MICRO DEVICES,
INC., Defendant.**

**Civ. No. 88–1750–E (CM).**

United States District Court,
S.D. California.

Dec. 13, 1988.

John Land, Spensley, Horn, Jubas & Lubitz, San Diego, Cal., Ellsworth Roston, Roston & Schwartz, Los Angeles, Cal., for plaintiff.

William L. Anthony, Jr., Robert C. Colwell, Gary T. Aka, Robert Barr, Townsend & Townsend, Palo Alto, Cal., Joseph A. Sawyer, Jr., Advanced Micro Devices, Inc., Sunnyvale, Cal., Christopher J. Healy, Philip David Kopp, Luce, Forward, Hamilton & Scripps, San Diego, Cal., for defendant.

## MEMORANDUM DECISION

ENRIGHT, District Judge.

### INTRODUCTION

On November 14, 1988, plaintiff Brooktree Corporation("Brooktree") filed an ex parte application for a temporary restraining order and an order to show cause why an injunction should not issue. The hearing was held at 3:00 p.m. on November 15,

1988; counsel for both plaintiff and defendant appeared. This court denied plaintiff's motion and set a hearing date of December 12, 1988 for plaintiff's motion for preliminary injunction.

## FACTUAL BACKGROUND

Brooktree is a California corporation in the business of designing, manufacturing, and selling semiconductor chip products used in computer graphic displays.

Defendant Advanced Micro Devices, Inc. ("AMD") is a competitor in the same business. It is one of the five largest manufacturers of chip products in the United States, with sales almost 30 times that of Brooktree.

Brooktree alleges that between 1981 and 1986 it invested approximately $3.8 million in developing integrated circuit chips that convert digital graphics image information to analog information at high frequencies for display on very high resolution computer video screens. It further claims that its chip has captured this niche market previously dominated by AMD.

Brooktree alleges that AMD has introduced pirated chips at lower prices in an attempt to recapture its lost market. These pirated chips are allegedly copies of two of Brooktree's chips.

The two Brooktree chips that are allegedly being copied represent 40% of Brooktree's sales. Brooktree alleges that AMD's unlawful conduct has caused irreparable injury, including damages of over $2,753,-000 in the last six months, lost sales, and lost ability to expand or go public due to lost profits. It further alleges that its total $30 million investment since 1981 is in jeopardy as the firm has only recently reached profitability and thus does not have the strength to weather the loss of sales due to AMD's conduct. Finally, Brooktree alleges that AMD's pirating is damaging Brooktree's other products as Brooktree is being forced to cut the cost of all its chips in order to keep its cost structure in line.

## STANDARD FOR EQUITABLE RELIEF

As set out by the Ninth Circuit in *Los Angeles Memorial Coliseum Commission v. National Football League*, 634 F.2d 1197, 1200 (9th Cir.1980), the four traditional criteria for granting equitable relief are:

1. a strong likelihood of success on the merits;

2. the possibility of irreparable injury to the plaintiff if the preliminary relief is not granted;

3. a balance of hardships favoring the plaintiff; and

4. (in certain cases) advancement of the public interest.

These criteria have been fashioned into two alternative tests, so that now a party may meet its burden by demonstrating either:

1. a combination of probable success on the merits and the possibility of irreparable injury; or

2. that serious questions are raised and that the balance of hardships tips sharply in the plaintiff's favor.

*Id.* at 1201. *Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935, 937 (9th Cir. 1987). *International Molders' and Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 550 (9th Cir.1986). In the Ninth Circuit "[t]hese two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Arcamuzi*, 819 F.2d at 937, *citing Oakland Tribune, Inc. v. Chronicle Publishing Co.*, 762 F.2d 1374, 1376 (9th Cir.1985). *See also San Diego Committee Against Registration and the Draft (CARD) v. Governing Board of Grossmont Union High School District*, 790 F.2d 1471, 1473 n. 3 (9th Cir.1986); *DeMasters v. State of Montana*, 656 F.Supp. 21, 23 (D.Mont.1986).

Finally, the decision whether to grant or deny temporary injunctive relief is committed to the sound discretion of the district court. *Oakland Tribune, Inc. v. Chronicle Publishing Co., Inc.*, 762 F.2d 1374, 1376 (9th Cir.1985); *DeMasters, supra.*

## I.

## MASK WORK ACT

This case was brought under the Mask Work Act, 17 U.S.C. §§ 901–914. Because

both copyright and patent protection were inadequate, the Mask Work Act was passed in an effort to protect the original layout of a semiconductor chip from piracy. (S.Rep. 98–425, p. 6–7). However, the Mask Work Act is not *sui generis* legislation; it is based upon concepts derived from copyright laws. (130 Cong. Rec. § 12924). A "mask work" is defined in the Mask Work Act as follows:

(2) a "mask work" is a series of related images, however fixed or encoded—

(A) having or representing the predetermined, three-dimensional pattern of metallic, insulating, or semiconductor material present or removed from the layers of a semiconductor chip product; and

(B) in which series the relation of the images to one another is that each image has the pattern of the surface of one form of the semiconductor chip product;

17 U.S.C. § 901(a)(2).

The Mask Work Act protects against the literal copying of a mask work and against the misappropriation of a material portion of a mask work.

Mask works sometimes contain substantial areas of (so-called "cells") whose layouts involve creativity and are commercially valuable. In appropriate fact settings, the misappropriation of such a cell—assuming it meets the original standards of this chapter—could be the basis for an infringement action under this chapter.

(H.Rep. 98–781, pp. 26–27).

However, the Mask Work Act does not prohibit independent development of a mask work; an identical but original second mask work is not an infringement of the first. 17 U.S.C. § 905(1). Also, the Mask Work Act only protects the "series of related images" encoded in the chip. 17 U.S.C. § 901(a)(2). It does not "extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 902(c).

Finally, the Mask Work Act specifically allows for reverse engineering. Section 906 provides that "it is not an infringement of the exclusive rights of the owner of a mask work for—

(1) a person to reproduce the mask work solely for the purpose of teaching, analyzing, or evaluating the concepts or techniques embodied in the mask work or the circuitry, logic flow, or organization of components used in the mask work; or

(2) a person who performs the analysis or evaluation described in paragraph (1) to incorporate the results of such conduct in an original mask work which is made to be distributed.

17 U.S.C. § 906(a).

## DISCUSSION

In the instant action, Brooktree alleges that AMD misappropriated two mask works from its Bt451 and Bt458 chips. The mask works are: (1) the location and configuration of the active areas in the Static Ram cells and (2) the location and path of the polysilicon lines in the Static Ram cells. (*See* Exhibit 5 for an example of the active area of a section of a Static Ram Cell array and Exhibit 7 for an example of the polysilicon lines).

Brooktree alleges that these two masks allow its Bt451 chip to: (1) utilize a low power technology—"CMOS"—which operates at very high frequencies without the need of a special supply of negative voltage; (2) change the colors in the color palette without disrupting the selection of particular colors from the palette for display on a video screen, and (3) simultaneously read information from, and write information to, the RAM without synchronizing the read and write operations while operating at very high frequencies.

Brooktree's allegations against AMD are twofold. First, Brooktree alleges that the mask works at issue in AMD's chips are substantially identical and/or substantially similar to those in Brooktree's own chips. Second, that this resemblance is not the result of extensive reverse engineering, but rather the result of simple copying.

## A. *Identical/Similar*

 The parties agree that if the defendant can produce a paper trail establishing reverse engineering, the appropriate standard is substantially identical rather than substantially similar. The court finds that defendant has produced a sufficient paper trail to require the plaintiff to prove that the alleged pirated chip is substantially identical to the original chip.

AMD argues that while the layout of the mask works at issue may be similar, they are not substantially identical. AMD also argues that this type of layout is the result of functional requirements, or, in other words, that it is essentially the only way of laying out the Static Ram circuit.

In response, Brooktree offers exhibits of two alternative designs developed by two separate individuals with limited knowledge of Brooktree's own layout. (Compare Exhibits 5 and 6 with 67 and 74; Exhibits 7 and 8 with 69 and 75; and Exhibits 13 and 14 with 70 and 76). However, rather than prove that there are a wide variety of potential layouts, these two new layouts, at best, merely confuse the issue, and, at worst, confirm AMD's position that functionally there is little room for diversity.

The two new designs do not utilize the same donut and pyramid shapes that Brooktree refers to in describing its own layout, but they do have the same basic clusters of components as the original designs. Also, the two new layouts were admittedly developed in a matter of hours. It is possible that if these designs had undergone testing to determine whether they would perform in the desired manner, they would have been modified and eventually appear more similar to the original layouts.

William Plants, the designer of AMD's chips, states in his declaration that the shape of the various regions in his layout was dictated by the functions of the regions. He also states that although his layout is similar to Brooktree's, there are substantial differences between specific aspects of the active regions of the two layouts.

Finally, AMD argues that even if the layouts were identical, these two cells do not comprise enough of the chips in question to support an allegation of misappropriation of a mask work. They argue that although the cells are repeated many times in the chip, they compromise only approximately 27–35% of the chip area. Brooktree counters this argument by stating that the cells compromise approximately 80% of the transistors in the chip, and that the transistors are the heart and soul of the chip.

## B. *Reverse Engineering*

AMD argues that Plants discovered his layout through reverse engineering, and that reverse engineering is specifically allowed under the Mask Work Act. AMD has presented evidence of a paper trail showing the various stages of Plants' discovery process. AMD maintains that it has invested an equal or greater amount of funds in developing its chips, and that the Mask Work Act was directed at minimal investment piracy rather than the type of long-term research and reverse engineering it performed.

Brooktree argues that what the paper trail actually establishes is that Plants was incapable of discovering the layout on his own. According to Brooktree, Plants had no experience in designing CMOS chips and spent over one year attempting to design a layout utilizing first six and then eight transistors as compared to Brooktree's layout which utilizes ten transistors. During this one-year period, plants studied Brooktree's Bt451 chip under a microscope and was unable to discover all ten of the transistors.

Brooktree alleges that Plants did not discover the ten transistors on his own but rather was shown a copy of Brooktree's ten transistor static RAM circuit by an employee of another competitor of Brooktree (Integrated Device Technology Corporation) which had supposedly copied Brooktree's Bt451 chip. After Plant was shown the ten transistor design, he allegedly went back to the microscope and studied the Bt451 chip to confirm the number of transistors and to determine their location and function in the design.

Brooktree maintains that the fact that Plant was able to finish his work on the layout in less than three months after being shown the ten transistor design is significant. Accordingly, Brooktree argues that the only paper trail that is relevant is what was created after Plant was shown the ten transistor design. Because the paper trail for the last three months is minimal, Brooktree argues that AMD has failed to offer sufficient facts to establish that AMD discovered the layout of the mask work at issue through reverse engineering.

AMD responds by arguing that the entire paper trail must be reviewed, and that the paper trail shows that Plant gradually discovered the correct layout. Plant states in his declaration that he started with six transistors as that is the minimum number possible, and that designers always begin at the minimum and work up. He states that the amount of time he spent working on six and eight transistor layouts demonstrates that he did not simply copy the Bt451. Plant admits to analyzing the Bt451 chip through a microscope, but maintains that only stripping the chip down chemically layer by layer and photographing each layer is prohibited by the Mask Work Act.

Based upon the above discussion, the court finds that Brooktree has failed to make a showing of a strong likelihood of success on the merits. Therefore, the degree of irreparable harm that Brooktree must establish is high. In the Ninth Circuit, the formulations applied to determine the appropriateness of a preliminary injunction "represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Arcamuzi*, 819 F.2d at 937, *citing Oakland Tribune, Inc. v. Chronicle Publishing Co.*, 762 F.2d 1374, 1376 (9th Cir.1985).

## II.

## IRREPARABLE HARM

■ Brooktree alleges that it has been irreparably harmed through the loss of $2,753,000 over the past six months due to forced price cuts; the loss of customers in a highly concentrated market; and the loss of profits which has prevented Brooktree from expanding and going public.

AMD argues that the damages Brooktree has identified are monetary and can be compensated without equitable relief. AMD points to the fact that Brooktree admits in its moving papers that it has not suffered any serious loss in sales or customers, and that Brooktree also admits that even if the court were to enjoin AMD, Brooktree would be unable to raise the prices for its chips. The grant of an injunction, therefore, would merely have the effect of guaranteeing that Brooktree would not have to compete with AMD for new sales. An injunction would not compensate Brooktree for the "irreparable harm" Brooktree alleges it has already suffered.

Brooktree also argues that, through its size, AMD will be able to weather a price war, and that the result of the current pricing competition will irreparably harm Brooktree. The court, however, finds this argument too tenuous. Brooktree has conceded that it has not yet suffered any serious loss in sales. The denial of an injunction will undoubtedly put an additional strain on Brooktree's profitability. However, the computer industry is a volatile industry with fortunes made and lost depending upon the whim of progress. Brooktree has failed to establish that monetary damages are insufficient in light of the considerable burden it bears in requesting the extraordinary relief of an injunction.

Finally, Brooktree argues that because it has shown that AMD infringed the mask work rights in the Bt451, a presumption of irreparable injury is created. Brooktree advances this proposition by analogy through copyright law in which infringement creates a presumption of irreparable injury. *See Apple Computer, Inc. v. Formula Intern., Inc.*, 725 F.2d 521, 525 (9th Cir.1984). Although Congress modeled the Mask Work Act after copyright law, it is unclear whether Congress intended such a presumption to extend to infringements of mask works. However, this court does not

need to reach the issue of whether the presumption exists as it has already found that Brooktree did not establish that its mask work rights were infringed.

## III.

### BALANCE OF HARDSHIPS

■ Brooktree also argues that equitable relief should be granted based upon the second formulation of the test for preliminary injunction: "that serious questions are raised and that the balance of hardships tips sharply in the plaintiff's favor." *Los Angeles Memorial Coliseum Commission*, 634 F.2d at 1201. Brooktree's reasoning is based upon the following factors: (1) sales of the types of chips in question are a much greater percentage of Brooktree's total sales than of AMD's total sales; (2) loss of these sales would have a much greater effect on Brooktree than AMD; (3) Brooktree has spent more time and resources in developing its chips; and (4) Brooktree is only just becoming profitable.

Although serious questions as to the appropriate resolution of the substantive issues in the case have been raised, Brooktree has not shown that the balance of hardships tips *sharply* in its favor. AMD is a larger company than Brooktree, but that is not a sufficient reason for enjoining it. AMD would not go out of business if it is enjoined, but Brooktree has failed to establish any concrete evidence of the probability that it will go out of business if relief is not granted. Finally, AMD has invested an equivalent amount into developing its chips as has Brooktree, and the fact that Brooktree is only now becoming profitable is nonpersuasive.

## IV.

### CONCLUSION

Upon due consideration of the parties' memoranda and exhibits, the arguments advanced at hearing, and for the reasons set forth above, the court hereby denies plaintiff's motion for preliminary injunction.