**BROOKTREE CORPORATION, Plaintiff,**

v.

**ADVANCED MICRO DEVICES, INC., Defendant.**

Civ. No. 88–1750–E (CM).

United States District Court, S.D. California.

Dec. 11, 1990.

David E. Monahan and John Allcock, Gray, Cary, Ames & Frye, San Diego, Cal., Ellsworth Roston, Los Angeles, Cal., for plaintiff Brooktree Corp.

Alexander L. Brainerd, Kenneth E. Keller, Keith R. Weed, David Eiseman, Bronson, Bronson & McKinnon, Martin C. Fliesler, Mark A. Haynes, Mark E. Miller, Fliesler, Dubb, Meyer & Lovejoy, San Francisco, Cal., Philip David Kopp, Christopher J. Healey, Luce, Forward, Hamilton & Scripps, San Diego, Cal., for defendant Advanced Micro Devices, Inc.

## MEMORANDUM DECISION AND ORDER

ENRIGHT, District Judge.

### INTRODUCTION

Brooktree is a California corporation in the business of designing, manufacturing, and selling semiconductor chip products used in computer graphic displays. AMD is a competitor and is one of the five largest manufacturers of chip products in the United States, with sales almost 30 times that of Brooktree.

This action was originally brought for infringement of mask works by Brooktree Corporation (Brooktree) against Advanced Micro Devices, Inc. (AMD). A bifurcated jury trial began on August 7, 1990, and ended on October 1, 1990. The jury found AMD liable on all but one of the patent claims, on all of the mask work claims, and found that AMD's infringement of Brooktree's patents had been willful. The jury awarded damages of over $25 million. AMD now brings this motion for Judgment Notwithstanding the Verdict ("JNOV") or, in the alternative, for a new trial. Concurrently, Brooktree brings motions for enhanced damages, attorney's fees and prejudgment interest.

AMD moves for a JNOV based upon ten main grounds:

1) With respect to the Mask Work claim, that a) no reasonable jury could have found that AMD did not prove its reverse engineering defense, and b) that no reasonable jury could have found that Brooktree proved Mask Work infringement.

2) That the '189 Patent is invalid a) due to Brooktree's addition of new matter after the patent's filing date; b) because Brooktree failed to disclose the best mode of practicing the invention in its patent filing; and c) because the patent was invalid as obvious.

3) That claims 5–7, 11 and 40 of the '189 Patent are not infringed.

4) That all claims of the '282 Patent are invalid as anticipated by an earlier patent or, in the alternative, are invalid as obvious in view of this earlier patent.

5) That the '282 Patent is invalid under 35 U.S.C. § 112 because the claims of the patent do not define an operable device.

6) That Claims 8–19 of Patent No. 4,831,-282 are not infringed.

7) That all of the evidence proves that AMD did not infringe any claim of the '688 Patent as properly interpreted.

8) That AMD is entitled to a judgment that claims 11–18 of the '688 patent are not infringed because Brooktree failed to introduce any evidence of infringement.

9) With regard to the finding of willfulness, there was not clear and convincing evidence that AMD's infringement was willful.

10) With regards to the jury award for lost profits, that Brooktree did not prove the absence of non-infringing substitutes.

AMD also argues in the alternative that a new trial should be granted, based upon the following eight grounds:

1) That as a matter of law the jury awarded excessive lost profits damages because the award included damages not caused by AMD's infringement.

2) That this court gave erroneous jury instructions concerning the Chip Protection Act and the definition of "willful patent infringement."

3) That this court improperly struck the declaration of one of AMD's experts.

4) That this court erred in prohibiting AMD from introducing surrebuttal testimony concerning the invalidity of the '282 Patent.

5) That this court refused to admit "the Donnelly reference" concerning the validity of the '189 Patent.

6) That this court erred in prohibiting AMD from introducing surrebuttal testimony concerning the validity of the '282 Patent.

7) That this court failed to strike certain testimony by Brooktree's damages expert.

8) Due to misconduct by Brooktree's counsel during closing argument.

## JUDGMENT NOTWITHSTANDING THE VERDICT STANDARD

When a party moves for JNOV, the trial court must consider all the evidence in a light most favorable to the non-mover, must draw reasonable inferences favorable to the non-mover, must not determine credibility of witnesses, and must not substitute its own choice for that of the jury between conflicting elements in evidence. *Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1512 (Fed.Cir. 1984), *cert. denied*, 469 U.S. 871, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984); *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1546 (Fed.Cir.1983). A JNOV is proper only if "the evidence permits only one reasonable conclusion as to the verdict." The motion must be denied if "reasonable minds could differ over the verdict." *Sjolund v. Musland*, 847 F.2d 1573, 1577 (Fed.Cir.1988). The court should grant the motion only if it is firmly convinced that reasonable people could not have reached the verdict brought in by the jury. *Perkin–Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed.Cir.1984), *cert. denied*, 469 U.S. 857, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984).

## ANALYSIS

### 1) *The Mask Work Claims*

Defendant AMD argues that the jury's mask work verdict is unsupported by any substantial evidence, and that its "condemnation" of AMD's reverse engineering runs counter to the purpose of the Semiconductor Chip Act. The crux of AMD's argument is as follows: 1) where reverse engineering has been shown, the test for determining infringement is whether the mask work is substantially identical to the registered mask work; 2) that given the evidence of AMD's photographic analysis of the BT451, its introduction of a "second source product" that directly competed with Brooktree's device, and its substantial investment in developing this second source product (along with an accompanying paper trail), no reasonable jury could find that AMD did not prove its reverse engineering defense; and 3) that AMD's mask work, given the over fifty (50) differ-

ences between the two mask works, was not substantially identical to Brooktree's mask work.

Brooktree, in answer to AMD's reverse engineering argument, argues first that the Chip Act prohibits more than production of perfect copies of patented mask works, and allows the production of reverse engineered mask works only if the resulting product is an "original." Brooktree also notes that AMD was allowed to present its reverse engineering defense to the jury, that at least two of the elements of that defense—whether the AMD analysis of Brooktree's mask work was of the type contemplated by the Chip Act and whether the mask works were "original"— were strongly contested by Brooktree, and that the jury was given AMD's instruction regarding the reverse engineering defense. In Brooktree's view, the jury simply decided that Brooktree's arguments and evidence were stronger, and that AMD failed in its attempt to prove its reverse engineering defense.

AMD has not made out a case for the granting of a JNOV on these grounds. Whether the defense consists of two or four elements, at least two of these elements were contested with credible evidence by Brooktree. In addition, the jury was given the AMD's instruction as to the elements of that defense. Given this state of affairs, with credible evidence presented on both sides, a reasonable jury could have found that AMD did not prove its reverse engineering defense. Given that, it is not necessary to reach AMD's further argument as to the test for infringement once a finding of "reverse engineering" has been made.

2) *The '189, '282, No. 4,831,282 and '688 Patents*

AMD next makes myriad arguments as to the validity and infringement of several of the Brooktree patents. Specifically, AMD argues that: 1) the '189 and '282 patents are invalid; 2) claims 5–7, 11 and 40 of the '189 patent are not infringed; 3) claims 8–19 of the No. 4,831,282 patent are not infringed; and 4) that the '688 patent,

properly interpreted, is not infringed by the AMD product.

These points need not be addressed individually. Both parties presented credible evidence to support their positions. The jury determined that the evidence weighed in Brooktree's favor. This court cannot say that AMD's evidence was so persuasive that no reasonable jury could have made such a determination. Accordingly, AMD's motion for a JNOV based on these grounds is also be denied.

■ In addition, Brooktree is correct in its assertion that, as to the '189 patents, AMD is barred from raising its alleged noninfringement of any claims of the '189 patent because it failed to raise these issues in its motion for a directed verdict. *See Kinzenbaw v. Deere & Co.,* 741 F.2d 383, 387 (Fed.Cir.1984), *cert. denied* 470 U.S. 1004, 105 S.Ct. 1357, 84 L.Ed.2d 379 (1985) ("If a party fails to specify an issue in its motion for a directed verdict, it may not subsequently challenge the jury's verdict on that issue....").

3) *Claims 11–18 of the '688 Patent*

With respect to the alleged infringement of claims 13–19 of the '282 patent and claims 11–18 of the '688 patent, AMD argues that it is entitled to a declaratory judgment because Brooktree failed to introduce any evidence of infringement of these claims. However, as Brooktree correctly points out, it voluntarily elected not to pursue those claims, and they were not included in the liability phase of the trial. These claims were therefor not before the jury, and no "actual controversy" exists that would make an adjudication of them appropriate at this point. 28 U.S.C. § 2201; Notes of the Advisory Committee on Federal Rule of Civil Procedure 57.

4) *Willfulness*

■ AMD also asks for a JNOV on the issue of willfulness, arguing that Brooktree did not prove by clear and convincing evidence that AMD's infringement was willful. In so arguing, AMD maintains that because it learned of the patent only upon the onset of this litigation, and be-

cause its defenses were not frivolous, that as a matter of law its infringement of the Brooktree patents was not willful. AMD cites *Gustafson, Inc. v. Intersystems Industrial Products*, 897 F.2d 508 (Fed.Cir. 1990), as support for this proposition.

■ The court in *Gustafson* held that "a party cannot be found to have 'willfully' infringed a patent of which the party had no knowledge;" and further that it is not a universal rule that to avoid willfulness one must cease manufacture of a product immediately upon the learning of a patent. *Id.* at 511. Thus, *Gustafson* only partially supports AMD's argument. It is clear, as a matter of law and logic, that AMD could not be held to have willfully infringed the Brooktree patents before it became aware of them. However, once it did become aware of these patents, whether or not their continued production constituted willful infringement depended upon the "totality of the circumstances." *Gustafson* at 510; *King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 867 (Fed.Cir.1985). As Brooktree points out, the circumstances to be considered do include the continued production of the allegedly infringing products during the course of the litigation. *Power Lift, Inc. v. Lang Tools, Inc.*, 774 F.2d 478, 482 (Fed.Cir.1985). Thus, while it is not a universal rule that continued manufacture of the product leads to a conclusion of willfulness, it is evidence to be considered in making that determination. The same is true of the failure to seek a legal opinion as to the validity and infringement of the Brooktree patents once AMD was put on notice. *Underwater Devices, Inc. v. Morrison Co.*, 717 F.2d 1380, 1389 (Fed.Cir. 1983).

During the course of this trial, both parties presented evidence on the willfulness issue. This included evidence that bore upon the time at which AMD became aware of Brooktree's patents, and whether AMD held a good-faith belief in the validity and infringement of those patents. The jury, after receiving instructions from this court that reflected the above case law, found that AMD did willfully infringe on Brooktree's patents. Given the totality of the circumstances standard, and the evidence presented during trial, a reasonable jury could have found that AMD had willfully infringed Brooktree's patents. Accordingly, AMD's motion for a JNOV on the issue of willfulness is denied.

### 5) *Lost Profits*

■ Finally, AMD argues that the verdict for lost profits must be reversed because Brooktree did not prove the absence of non-infringing substitutes. Once again, evidence was presented by both sides as to the existence of non-infringing substitutes, and as to the meaning of "substitute" within the context of these products. The jury found the evidence presented by Brooktree to be more compelling, and AMD has not made a showing that this finding was unreasonable. Accordingly, AMD's motion is denied.

## MOTION FOR A NEW TRIAL STANDARD

■ The standard for granting a new trial based on insufficiency of the evidence is more liberal than the standard for a motion JNOV. *William Inglis v. ITT Continental Baking Co.*, 668 F.2d 1014, 1026–7 (9th Cir.1981); *cert denied*, 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982). When deciding a motion for a new trial based upon insufficiency of the evidence, the court has the right and duty to weigh the evidence. *Murphy v. City of Long Beach*, 914 F.2d 183 (9th Cir.1990). In addition, the court may also consider the credibility of the trial witnesses. *Fount–Wip, Inc. v. Reddi–Wip, Inc.*, 568 F.2d 1296, 1302 (9th Cir.1978). The court may set aside the jury's verdict, even though supported by substantial evidence where, in the court's conscientious opinion, the verdict is contrary to the clear weight of the evidence. *Murphy v. City of Long Beach*, 914 F.2d 183 (9th Cir.1990). However, in deciding whether the jury verdict is "contrary to the clear weight of the evidence," the court should give appropriate deference to the jury's function as fact finder. *Richardson v. Suzuki Motor Co. Ltd.*, 868 F.2d 1226, 1245 (Fed.Cir.1989),

*cert. denied,* —— U.S. ——, 110 S.Ct. 154, 107 L.Ed.2d 112 (1989).

## ANALYSIS

### 1) *Lost Profit Damages*

 AMD argues that a new trial should be ordered because, as a matter of law, the jury awarded excessive lost profit damages by including damages not caused by AMD's infringement. As support for this proposition, AMD takes issue with the calculations made by Brooktree's experts during the trial, arguing that these calculations include losses that occurred before AMD began marketing the infringing products. Brooktree counters by arguing that it first lowered its prices in response to AMD's aggressive marketing and pre-selling of its products, and that its profits were thus affected before AMD actually began selling the infringing products. Both parties claim that the testimony and exhibits entered into evidence during trial bear out their contentions.

AMD's contentions are based upon one theory as to when its activities first impacted on Brooktree's sales. Brooktree's contentions are based upon another theory. Both theories find support in the evidence presented at trial. AMD had the opportunity at trial to make its arguments as to the proper measure of lost profit damages during trial. As the verdict now stands, the jury's determination finds support in the evidence presented. Accordingly, AMD's motion for a new trial based on this ground is denied.

### 2) *Jury Instructions Concerning the Chip Act and the Definition of "Willful Patent Infringement"*

 AMD also argues for a new trial on the grounds that this court gave erroneous jury instructions concerning the Chip Protection Act and the definition of "willful patent infringement."

AMD first argues that Liability Instructions Nos. 63 and 69 were erroneous and prejudicial because they permitted the jury to compare a portion of the AMD and Brooktree mask works—rather than the entire mask work as a whole. According to AMD, the Chip Act imposes liability only where the alleged infringing chips are substantially similar to the patent holder's entire mask work.

This court has already held that Brooktree need not prove that every single layer, circuit and cell of the AMD chip is similar to Brooktree's mask work in order to prevail under the Chip Act. *Brooktree v. Advance Micro Devices, Inc.,* 705 F.Supp. 491, 494 (S.D.Cal.1988). It is enough for recovery under the Chip Act if a finding is made that AMD misappropriated a material portion of the mask work. *Brooktree,* 705 F.Supp. at 494. Jury instructions Nos. 63 and 69 reflected this standard. AMD motion for a new trial on this basis is therefor without merit.

AMD also argues that Damages Instruction No. 30 incorrectly stated the standard for determining whether a patent violation is willful. AMD contends that the sole test for willfulness is contained in *Gustafson, Inc. v. Intersystems Industrial Products, Inc.,* 897 F.2d 508 (Fed.Cir.1990). As discussed above, AMD is incorrect in its assertion that *Gustafson* overrules the "totality of the circumstances" test (which is explicitly reaffirmed in that case). AMD motion for a new trial on this basis is therefor denied.

### 3) *Evidentiary Rulings and Attorney Misconduct*

AMD also moves for a new trial based on three evidentiary rulings made by this court during trial, and also based upon "misconduct" by counsel for Brooktree during closing argument.

These final grounds do not require extended discussion. The first concerns this court's refusal to admit a declaration by Dominick Richiuso concerning the validity of the '189 patent. Mr. Richiuso was on the stand at the time the declaration was offered, and Brooktree at that time objected to its introduction on grounds of hearsay. The court noted that the objection was a good one, but allowed the declaration in subject to a motion to strike. It was later, without objection from AMD, strick-

en from the record. AMD now claims that, in spite of the warning given by the court, it relied on the admissibility of the declaration in questioning Mr. Richiuso, and that this reliance justifies the granting of a new trial. This court stands behind its prior ruling, and will not grant a new trial due to AMD's error in not heeding the clear message given by the court at the time the declaration was introduced into evidence.

AMD's second ground is this court's refusal to allow AMD from introducing surrebuttal testimony concerning the invalidity of the '282 patent. The decision of whether to allow even proper surrebuttal testimony is entirely within the trial court's sound discretion. *United States v. McCollum,* 732 F.2d 1419 (9th Cir.1984); *cert. denied,* 469 U.S. 920, 105 S.Ct. 301, 83 L.Ed.2d 236 (1984). Here, AMD was simply seeking to repeat testimony already presented in its case in chief. AMD Brief, p. 16. It was thus not proper to introduce it as surrebuttal testimony. This court stands behind its prior ruling.

AMD also bases its motion for a new trial on this court's refusal to strike certain testimony made during trial by Robert Wallace, one of Brooktree's expert witnesses. AMD based its objection to the testimony on the grounds that Mr. Wallace relied on data Brooktree failed to produce during discovery. Brooktree asserts that such data was never compiled, and notes that AMD has not identified the document which allegedly contained this information. AMD's vague and ambiguous allegation concerning this data is not a sufficient basis upon which to grant a new trial.

Finally, AMD moves for a new trial on the basis of alleged misconduct by Brooktree's counsel during closing argument. First, AMD contends that during closing argument in the damages phase of the trial, Brooktree's counsel argued that the law required the jury to utilize a "market share" approach in determining damages, even though the court had specifically rejected a jury instruction articulating this approach. Second, AMD contends that Brooktree referenced the pre-issuance actions and knowledge of AMD in the willful-

ness section of its closing statement, even though the court had already adopted an instruction on willfulness that precluded pre-issuance action from that determination.

AMD objected to both of these references during closing argument. This court overruled those objections, and noted to the jury that although both counsel were free to argue what they think the evidence showed, the law to be applied would be given in the jury instructions. While it is doubtful that any prejudice accrued from the references made by Brooktree's counsel, any that did was dispelled by this court's admonition to the jury. Accordingly, AMD's motion for a new trial based on these grounds is denied.

## ENHANCED DAMAGES

In light of the jury's finding that AMD's infringement of Brooktree's patents was willful, Brooktree has requested this court impose "enhanced" damages in the amount the court considers just.

Under 35 U.S.C. § 284, upon a finding for the claimant, the court may, in its discretion, increase damages up to three times the amount found or assessed. The primary justification upon which courts award "enhanced" damages has been a finding of willful infringement by the defendant. *See, e.g., Del Mar Avionics v. Quinton Instrument Co., Inc.,* 836 F.2d 1320, 1328 (Fed.Cir.1987); *Central Soya Company, Inc. v. GOA Hormel & Company,* 723 F.2d 1573, 1577 (Fed.Cir.1983). However, while it is common for courts to award enhanced damages where willfulness is shown, a finding of willfulness does not always lead to the award of enhanced damages. "A finding of willful infringement merely authorizes, but does not mandate, an award of increased damages." *Modine Mfg. Co. v. The Allen Group, Inc.,* 917 F.2d 538 (Fed.Cir.1990).

## ANALYSIS

Brooktree argues that the imposition of enhanced damages is almost automatic once a finding of willful infringement

has been made. To support this assertion, Brooktree has provided a statistical survey of all of the cases that have been appealed to the Federal Circuit in which either a finding of willful infringement was made at the trial level or the Federal Circuit made a finding of willful infringement on appeal. In only four of the 33 cases cited in the plaintiff's survey did the trial court make a finding of willful infringement and yet refuse to impose enhanced damages. In addition to this statistical analysis, Brooktree also argues that AMD's "aggressive" conduct in this case (continuing to sell the infringing products without advice of counsel and without, according to Brooktree, a reasonable belief of non-infringement), as well as AMD's financial condition, make the award of enhanced damages particularly appropriate.

AMD in essence asserts that enhanced damages should not be awarded because: 1) AMD asserted a vigorous and good-faith defense to the infringement claims; 2) the injunction and damages awards already imposed have sufficiently punished AMD; and 3) Brooktree has already been fully compensated for any damages it suffered due to the infringement.

 Imposition of enhanced damages lies solely within the discretion of the trial court, with that discretion informed by the court's familiarity with the matter in litigation and the interests of justice. *Rite–Hite Corp. v. Kelley Co.*, 819 F.2d 1120, 1126 (Fed.Cir.1987). In addition, in deciding whether to impose enhanced damages, a court may take into consideration the weight and strength of the evidence upon which the finding of willful infringement was based. *See Modine Mfg. Co. v. The Allen Group, Inc.*, 917 F.2d 538 (Fed. Cir.1990) (declining to award treble damages because the evidence upon which the willfulness finding was based was not very strong).

In this case, the jury has found that AMD willfully infringed Brooktree's patents. As discussed in the previous section of this opinion, there was sufficient evidence upon which to base that finding to defeat a motion for JNOV on that issue.

However, the evidence supporting the jury's finding was not as strong as it could have been, and is not of the weight and strength that would support the imposition of enhanced damages. Lack of an opinion letter from counsel, and the continued production of the infringing products during litigation are a not a sufficient hook upon which to hang an award of enhanced damages. The weakness of the evidence bearing upon the willfulness issue, the court's familiarity with the matter, and the interests of justice all counsel this court to decline to award enhanced damages in this case. Accordingly, Brooktree's statistical advantage notwithstanding, its request for the imposition of enhanced damages is denied.

## AWARD OF ATTORNEYS' FEES AND OTHER EXPENSES

Under the relevant section of the U.S. patent code, 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." In addition, the Semiconductor Chip Act permits a court, at its discretion, to allow recovery of full costs, including reasonable attorney's fees, by a prevailing party. Brooktree asks this court to award attorney fees and other expenses under these two statutes.

### 1) *Attorneys' Fees Entitlement Under Patent Law*

 As stated above, attorneys' fees may be awarded under 35 U.S.C. § 285 only in exceptional cases. The Federal Circuit has recognized that awards for attorney's fees are proper where there is a finding of willful infringement. *Del Mar Avionics, Inc. v. Quiton Instrument Co.*, 836 F.2d 1320, 1329 (Fed.Cir.1987). However, such an award is discretionary, and does not automatically follow from a finding of willfulness. *Avia Group International, Inc. v. L.A. Gear California*, 853 F.2d 1557, 1567 (Fed.Cir.1988). As with the decision of whether to award enhanced damages, the court's exercise of its discretion should be informed by the court's familiarity with the matter in litigation and

the interests of justice. *Rite–Hite Corp. v. Kelley Co., Inc.*, 819 F.2d 1120 (Fed.Cir. 1987).

Given the above framework, this court's analysis of Brooktree's request for an award of attorneys' fees under patent law is identical to the above discussion regarding enhanced damages. Here, as there, the same finding of willfulness is at the heart of the plaintiff's request. Here, as there, the court's discretion should be informed by the court's familiarity with the case and the interests of justice. As discussed in the previous section of this opinion, the relatively weak evidence upon which the finding of willful infringement was based, and consequentially the interests of justice, counsel against an award of attorneys' fees. Accordingly, this court finds that this case is not an "exceptional" one justifying the award of attorneys' fees based on § 285.

### 2) *Attorneys' Fees Entitlement Under the Semiconductor Chip Protection Act*

■ The Semiconductor Chip Protection Act permits the court, at its discretion, to allow recovery of full costs, including reasonable attorneys' fees, to a prevailing party. 17 U.S.C. § 911(f). Under this section, this court may allow Brooktree to recover that portion of its costs related to the pursuance of its mask work claims.

The Semiconductor Chip Protection Act was *sui generis*, and there is no case law upon which this court may base its exercise of discretion. However, a substantial portion of the provisions of the Chip Act were modeled after U.S. copyright laws. Both parties ask this court to look to copyright precedent to find guidance in this area.

Brooktree, for its part, argues that applicable copyright law supports an award of attorneys' fees and attendant litigation costs. As support for this proposition, Brooktree cites *McCulloch v. Albert E. Price, Inc.*, 823 F.2d 316 (9th Cir.1987). In that case, the court noted that because 17 U.S.C. § 505 of the copyright statute, which is similarly worded and substantively identical to 17 U.S.C. § 911(f), was "intend-

ed in part to encourage the assertion of colorable copyright claims ... to deter infringement ... and to make the plaintiff whole, ... fees are generally awarded to a prevailing plaintiff." *McCulloch*, 823 F.2d at 322–323. Brooktree argues that by analogy, the Chip Act should be given a similarly broad reading, and that on this basis the court should grant the award of litigation expenses.

AMD also cites to *McCulloch*, but argues that the case supports its claim that litigation expenses should not be awarded under the Chip Act. The court in *McCulloch* stated that "the presence of a complex or novel issue of law the defendant litigates vigorously and in good faith" is a factor justifying denial of attorneys' fees. AMD, building from this language, argues that given the recent vintage of the Chip Act, and that this court's earlier ruling in *Brooktree, supra*, was the first reported case under the Act, this case presented nothing but novel issues of law. Specifically, AMD asserts that the issues of originality and infringement of the mask work, whether the mask work was to be considered as a whole, and the scope of the reverse engineering defense under the Chip Act were all novel issues of law that were vigorously litigated in good faith by AMD. AMD also notes that the jury's finding of willful infringement applied only to the patent infringement.

■ Under the traditional "American Rule," each side bears his own attorneys' fees. The purpose of this rule is "to avoid penalizing a party 'for merely defending or prosecuting a lawsuit.'" *Rohm & Hass Co. v. Crystal Chemical Co.*, 736 F.2d 688, 690 (Fed.Cir.1984). However, Congress has seen fit to carve out statutory exceptions to this rule to promote particular goals. Two of these exceptions are found in the copyright laws and the Chip Act. While decisions based on the copyright laws can provide support only by way of analogy, the analogy argued for by both sides in this case is well taken. Given the similarity of the language in the two sections, and the conceptual similarity between the "products" being protected un-

der the copyright laws and the Chip Act, it follows, in the absence of contrary legislative history, that the purposes of the sets of provisions are broadly the same. This conclusion leads, under the interpretation of the copyright laws by the *McCulloch* court, to a view that the award of litigation expenses, including reasonable attorneys' fees, should be the rule rather than the exception.

However, it also follows that if this broad view of § 911(b) of the Chip Act is to be taken, then judicial exceptions similar to those found in copyright law should also apply. For this reason, Brooktree's request for an award of litigation expenses based upon the Chip Act must be denied. This litigation has led to the first reported case to interpret the provisions of the Chip Act. By virtue of this fact, and also by virtue of the complexity and evolving nature of the technology to which the Chip Act applies, many of the questions presented in this litigation were inherently novel. On this basis, the "complex and novel" exception articulated by the *McCulloch* court should apply in this case. Accordingly, Brooktree's request for an award of litigation expenses under the Chip Act is denied.

## PREJUDGMENT INTEREST

Finally, Brooktree has asked this court to award prejudgment interest for damages from AMD's infringement of Brooktree's patents and mask works. As with Brooktree's request for an award of attorneys' fees, both the Chip Act and § 284 of the patent laws must be examined separately to determine whether Brooktree's request should be granted.

1) *Prejudgment Interest Under The Chip Act*

 There is no provision under the Chip Act for the recovery of prejudgment interest by a successful plaintiff. In addition, there is no case law under the Act regarding such an award. Brooktree argues that silence on the part of the statute does not mean that this court is prohibited from awarding prejudgment interest. As

support for this proposition, Brooktree cites *Frank Music Corp. v. Metro–Goldwyn–Mayer Inc.*, 886 F.2d 1545, 1550 (9th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1321, 108 L.Ed.2d 496 (1990). In that case, the court held that an award of interest under the 1909 Copyright Act supported the underlying purposes of the Act. The court expressed no opinion as to whether such an award would be available under the Copyright Act of 1976, the statute from which much of the Chip Act was modeled.

AMD argues that the court should not imply a remedy that is not contained in the Chip Act, and further cites to authority from other circuits in which courts have held that prejudgment interest may not be awarded under the Copyright Act of 1976. *See, e.g., Robert R. Jones Associates, Inc. v. Nino Homes*, 858 F.2d 274, 282 (6th Cir.1988); *Broadcast Music, Inc. v. Golden Horse Inn Corp.*, 709 F.Supp. 580, 581 (E.D.Pa.1989).

AMD's argument is well taken. Certainly, the authority they cite, from other circuits and pertaining only to an analogous statute, does not provide a conclusive basis for their position. However, given that the Chip Act itself is silent as to the award of prejudgment interest, this court should not imply an additional remedy without some indication in the statute or the legislative history—and Brooktree has pointed to none—which would justify the conclusion that it was Congress' intention that such awards should be granted. Accordingly, the award for prejudgment interest for damages under the Chip Act is denied.

2) *Prejudgment Interest Under the Patent Laws*

 Prejudgment interest is a proper element of damages in a patent infringement suit under 35 U.S.C. § 284, and should generally be awarded to a successful plaintiff absent some justification. *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 656–657, 103 S.Ct. 2058, 2062–63, 76 L.Ed.2d 211 (1983). AMD argues that the court has discretion whether to award prejudgment interest, and there is lan-

guage in *General Motors* to the effect that such an award is not mandatory. It seems clear, however, from both the language of § 284 and *General Motors* that an award of prejudgment interest is the rule rather than the exception. Accordingly, Brooktree's request for prejudgment interest should be granted.

However, even though Brooktree is entitled to prejudgment interest under the patent statute, it can only recover such interest if it can successfully segregate the damage award between the patent and mask work damages. This court rejects AMD's argument that such an allocation cannot, as a matter of law, be done after the jury has already rendered a verdict and damage figure. But the burden to make this allocation with sufficient certainty rests with Brooktree. Therefor, this court's granting of Brooktree's request for prejudgment interest under the patent laws is conditioned upon the submission of data that clearly shows the allocation of damages between the patent and mask work claims. In addition, both parties will submit supplemental briefs as to the interest rate at which these damages should be calculated.

## CONCLUSION

Upon due consideration of the parties' memoranda and exhibits, the arguments advanced at hearing, and for the reasons set forth above, the court hereby:

I. Denies AMD's motion for a JNOV based upon its contention that it had proved its reverse engineering defense as a matter of law.

II. Denies AMD's motion for a JNOV based upon its assertions of the invalidity or non-infringement of the '189, '282, No. 4,831,-282 and '688 Patents.

III. Denies AMD's motion for a declaratory judgment with respect to claims 13–19 of the '282 patent and claims 11–18 of the '688 patent.

IV. Denies AMD's motion for JNOV on the issue of willful infringement.

V. Denies AMD's motion for JNOV on the issue of lost profits.

VI. Denies AMD's motion for a new trial based upon its contention that the jury awarded excessive lost profit damages.

VII. Denies AMD's motion for a new trial based upon the asserted errors in the instructions in the jury instructions concerning the Chip Act and the issue of willful infringement.

VIII. Denies AMD's request for a new trial based upon the court's refusal to admit a declaration by Dominick Richiuso concerning the validity of the '189 patent, the refusal to strike certain testimony made during trial by Robert Wallace, and the alleged misconduct of Brooktree's counsel.

IX. Denies Brooktree's request for enhanced damages.

X. Denies Brooktree's request for attorneys' fees based on § 285 of the patent statute.

XI. Denies Brooktree's request for an award of attorneys' fees and other litigation expenses under the Chip Act.

XII. Denies Brooktree's request for prejudgment interest under the Chip Act.

XIII. Grants Brooktree's request for prejudgment interest under § 284 of the patent statute conditioned upon the submission by Brooktree of data clearly segregating the damage award between patent and mask work claims. Additionally, both parties shall submit supplemental briefs regarding the rate at which the prejudgment interest should be calculated. A supplemental memorandum deci-

sion will be issued regarding these issues.