**Connie CLEVELAND, Appearing by and through Archie Cleveland, her Guardian ad litem, Appellant,**

v.

**SOUTHERN PACIFIC COMPANY, Appellee.**

**No. 24019.**

United States Court of Appeals, Ninth Circuit.

Dec. 2, 1970.

Rehearing Denied Feb. 15, 1971.

---

James W. Walton, (argued), of Ringo, Walton & McClain, Corvallis, Or., for appellant.

Herbert H. Anderson (argued), of McColloch, Dezendorf & Spears, Portland, Or., for appellee.

Before HAMLEY, MERRILL and KOELSCH, Circuit Judges.

HAMLEY, Circuit Judge:

Connie Cleveland, a minor, was injured when an automobile in which she was a passenger drove into the side of a Southern Pacific Company train standing across an Oregon highway on the night of August 28, 1967. Appearing through her father, Archie Cleveland, as guardian ad litem, she sued the railroad company in this diversity action to recover seventy-five thousand dollars damages for her injuries.

The jury returned a verdict for plaintiff in the sum of fifteen thousand dollars. The trial court granted judgment notwithstanding the verdict, for defendant. In the alternative, to be operative in the event the judgment n. o. v. were not sustained on appeal, the trial court granted a new trial. This appeal followed.

The only allegation of negligence which is debatably supported by substantial evidence is the asserted failure of the railroad to give an adequate warning of the presence of a train standing on the crossing on the night in question. Plaintiff does not here question the district court's rejection of plaintiff's contention that a warning was required because the crossing was extra-hazardous. Instead, plaintiff argues, as she also did in the trial court, that a warning was required because the railroad "customarily gave warning of the presence of a stopped and parked train by use of signals, flares, lanterns or signalmen [and] that plaintiff's driver relied on such custom."

In granting the judgment n. o. v., the trial court held that: (1) under Oregon law a practice must be invariable before a plaintiff may characterize it as custom and predicate liability because of failure to follow custom on a particular occasion; (2) there is no substantial evidence in this case that defendant railroad invariably gave warning of a stopped train at night on the crossing in question by the use of signals, flares, lanterns or signalmen,[1] and (3) there is no substantial evidence to support a finding that plaintiff relied on such a custom. On appeal plaintiff takes issue with each of these rulings.

If there is in this record substantial evidence that the railroad had invariably given such a warning prior to this accident it would be unnecessary to decide whether, under Oregon law, absolute invariability of practice is required in order to predicate liability upon failure to

---

1. Inherent in this formulation of the reason why judgment n. o. v. was granted is the fact that there was substantial evidence that, on this occasion, the railroad did not give any such warning.

follow a custom. We accordingly turn immediately to the question of whether there is substantial evidence that the railroad's past practice in this regard was invariable.

In considering this question we have the advantage of the trial court because we have before us the reporter's transcript of the actual testimony, transcribed after the appeal was taken. While plaintiff calls attention to the testimony of several witnesses, we think the sufficiency of evidence of an invariable practice to give such a warning at this crossing must stand or fall on the testimony of plaintiff's father, Archie Cleveland.

When he testified for plaintiff, Cleveland was asked questions only with regard to plaintiff's injuries. But the railroad called him as a defense witness and questioned him concerning the practice of the railroad in warning approaching night-time traffic that a train was standing across the highway at this crossing. His full testimony is quoted in the margin.[2]

The railroad does not contend that Cleveland was not competent to testify as to the railroad's practice with regard to the giving of warnings at this crossing.[3] As indicated in the margin, he testified that: "(i)f there wasn't a flare, there was a signal of some sort." In our opinion, this testimony constitutes substantial evidence of the custom in question.

It is true that Cleveland testified, in effect, that the railroad did not always use a flare or lantern. He said that sometimes there was a flare "and sometimes there was not." He testified that when there wasn't a flare, there was "usually" a lantern. He added that "about half the time there would be no flare."

But the custom alleged was not that, on such occasions, the railroad always used flares, or always used lanterns, or always used one or the other. Instead, it was plaintiff's contention that the railroad always used "signals, flares, lanterns or signalmen." Cleveland's testimony that if there wasn't a flare, "there was a signal of some sort," fully supports this contention.

The railroad calls attention to the word "possibly" in the following testimony given by Cleveland on cross-examination:

"Q When there was no flare, would there be a man with a lantern?

"A If there wasn't a lantern, there would *possibly* be one on the east side or one with a lantern."

The use of "possibly" might have been construed by the jury as constituting a retraction of the immediately preceding categorical language to the effect that if there was no flare, there was a signal of some sort. But we do not believe the jury was obliged to so construe that word. Read in context, the jury could reasonably have concluded that Cleveland meant that if there was not a flare

---

2. "Q Mr. Cleveland, have you previously approached this crossing from the west when the train was on the track at night? A I have, yes. Q And sometimes there was a flare and sometimes there was not; isn't that correct? A That's right. Q About half the time I think you have indicated? A When there wasn't a flare, there was usually a lantern. If there wasn't a flare, there was a signal of some sort. Q But about half the time there would be no flare? A That's right."

"CROSS EXAMINATION
"BY MR. RINGO: Q When there was no flare, would there be a man with a lantern? A If there wasn't a lantern, there would possibly be one on the east side or one with a lantern.
"BY MR. ANDERSON: Q Could you see the flare on the east side from the west side? A Not always. It depended where the train was parked. You see, the trucks take up a good distance of space. It would depend on where the trucks were. MR. ANDERSON: That's all."

3. It could hardly do so, having itself called this witness to testify on that subject.

or lantern on one side of the train, there would "possibly" be a flare on the other side and, if not, a lantern.

Moreover, when Cleveland used the word "possibly," he was answering a question concerning only two kinds of warning devices—flares and lanterns. The jury could reasonably have concluded that Cleveland meant that there were occasions when there was neither a flare nor a lantern, but that he did not mean that, if neither of these devices were in use, the railroad used no other warning device.

The construction of "possibly" for which the railroad argues, is not compelled by the context and would amount to a contradiction of what Cleveland had just said concerning the railroad's practice. Having in mind the established principle that, in reviewing a judgment n. o. v., the evidence is to be viewed in the light most favorable to the plaintiff, we think the jury could have reasonably found that, at this particular crossing, the railroad had in the past followed the invariable practice of giving a warning by one of the described means.[4]

■ As noted above, the trial court also held that there was no substantial evidence to support a finding that, on the night of the accident, the plaintiff relied on this custom.

■ The injured plaintiff, Connie Cleveland, was only a passenger in the automobile which collided with the side of the train. It is therefore not her reliance, but that of the driver of the automobile, Jeffrey L. Shelton, which is relevant.

Shelton testified that he was familiar with the crossing and had many times observed railroad trains on that crossing at night. He testified that he had "almost always" seen a flare under these conditions, and when he had not, it was usually because it was raining, "and there is usually someone there swinging a lantern." He was asked if, on the evening of the accident, he was aware how the railroad "usually" handles that crossing. Shelton replied: "I was aware they use flares and some kind of signals."

Shelton testified that he had been over the railroad crossing a hundred times. On cross-examination, he conceded that, in a pretrial deposition, he had testified that he had seen the train stopped at night on this crossing only from three to five times previous to the accident. In this deposition Shelton was also asked how many times he had seen a "fusee" on the road as he approached the crossing from the west, which was the direction from which he approached the crossing on the night of the accident. He replied: "I have seen it once or twice." He was not asked, on cross-examination, whether he had seen any other kind of warning signal.

Shelton did not explicitly state that on the night of August 28, 1967, he relied upon the absence of flares or some other kind of signals as an indication that no train was standing across the tracks. However, applying the governing rule referred to in note 4, we think the jury could reasonably have found that an averment of reliance is implicit in Shelton's other testimony, summarized above.

We therefore hold that a judgment notwithstanding the verdict should not have been entered for defendant railroad. This determination renders it unnecessary for us to decide whether the district court correctly construed the Oregon law on the issue of custom.

As noted at the outset of this opinion, the trial court, as an alternative to the granting of the judgment n. o. v., to become effective in the event the judgment n. o. v. were not sustained on appeal, granted a new trial. It did so on the

4. A judgment notwithstanding the verdict must be reversed if, viewing the evidence in the light most favorable to the plaintiff, and guided by applicable principles and rules of law, a jury could reasonably have imposed liability upon the defendant. Rumsey v. The Great Atlantic and Pacific Tea Company, Inc., 408 F.2d 89, 90 (3rd Cir. 1969).

theory that the issue of custom was not properly submitted to the jury. Specifically, the court stated that it had not instructed the jury on the meaning of "custom."

Plaintiff appealed from the judgment n. o. v., but did not, in the notice of appeal or in her briefs on appeal, oppose the alternative order granting a new trial. At oral argument counsel for plaintiff, pointing out that defendant had made no alternative motion for a new trial, expressed the view that Rule 50(b) and (c), Federal Rules of Civil Procedure, governing the granting of alternative motions for a new trial, did not authorize the alternative order here entered. Counsel later receded from this position. Counsel also conceded that the instructions were probably inadequate with regard to "custom," since there was no definition of that term. Counsel did not discuss the applicability of Rule 59(d), Federal Rules of Civil Procedure, governing the granting of new trials on the initiative of the court.

 Under the described circumstances we consider that plaintiff has not effectively challenged the order granting a new trial. Apart from this, we think that the district court did not abuse its discretion in granting a new trial on the ground indicated.

Reversed and remanded for a new trial.