914 F.2d 183
 Miyuki MURPHY, Administratrix of the Estate of Edward
Murphy, deceased, as Administratrix and
individually; Lillian Murphy; Clifton
Murphy, Plaintiffs-Appellees,
v.
CITY OF LONG BEACH; Charles B. Ussery, Chief of Police;
Raymond Nelson; Gordon W. Collier, Defendants-Appellants.
 No. 87-6667.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 4, 1990.
Decided Sept. 14, 1990.
 
 William A. Reidder, Senior Deputy City Atty., City of Long Beach, Long Beach, Cal., for defendants-appellants.
 Joseph H. Duff, Los Angeles, California; John H. Edwards, III, Los Angeles, Cal., for plaintiffs-appellees.
 Michael J. Ogaz, Deputy City Atty., San Jose, Cal., for amicus.
 Appeal from the United States District Court for the Central District of California.
 Before HUG, BEEZER and NOONAN, Circuit Judges.
 HUG, Circuit Judge:
 
 
 1
 This is an appeal from a district court's entry of judgment notwithstanding the verdict and its grant of a conditional new trial in the event the judgment notwithstanding the verdict was reversed on appeal. We reverse in part, affirm in part, and remand.
 
 FACTS
 
 2
 In September, 1983, Edward Murphy walked into the street, in front of his home, with a rifle in his hand. There is no indication that Murphy knew that anybody had seen him out in the street. However, Murphy's neighbor, Eric Chance, had seen him and called the police.
 
 
 3
 The police dispatcher issued a call that a man was suspected of committing a misdemeanor by exhibiting a deadly weapon "in a rude, angry or threatening manner...." Cal.Penal Code Sec. 417(a)(1) (West Supp.1990). Four police cars from the Long Beach Police Department arrived at the scene in response to this dispatch. The officers at the scene included the defendants in the action at issue, Sergeant Raymond Nelson and Officer Gordon Collier. Nelson and Collier were also accompanied by four other officers from the Long Beach Police Department; among them was Collier's patrol partner, Officer Joseph Rabe. Upon arrival, a few of the officers spoke with Chance, the neighbor who had called the police.
 
 
 4
 The officers then approached Murphy's house. Rabe went to the "front" door, located on the side of the house, to initiate contact with Murphy. The other officers surrounded the house at various locations. Of particular import is the location of Collier. Collier positioned himself at the Murphys' front window, from which he had a view of Murphy sitting at his dining room table. Collier had his gun pointed at Murphy. Collier noticed that Murphy was sitting at his dining room table with a rifle. Collier stepped away from the window and in an audible tone informed his fellow officers that: "The gun is on the table." Collier stepped back towards the window and was then joined by Nelson. Nelson responded, in audible tones: "Where's the gun?" Within seconds, Murphy rose from the table with his rifle, shouting: "Who's outside my house?" At the same time, Rabe was knocking at the door announcing "police." Murphy turned toward the door and Rabe backed away, stumbling in the process.
 
 
 5
 At this point, the facts are disputed. The officers claim that Murphy positioned himself toward the window at which Collier stood, preparing to shoot. Only then, according to the officers, did Collier shoot Murphy. The Murphys, on the other hand, maintain that Murphy was not preparing to shoot.
 
 
 6
 The end result was that Collier shot and killed Murphy while Murphy was in the dining room of his home.
 
 PROCEDURAL BACKGROUND
 
 7
 In July, 1984, Murphy's wife and two children ("the Murphys") filed a complaint against the City of Long Beach; Charles Ussery, Long Beach Chief of Police; Gordon Collier; Joseph Rabe, Collier's patrol partner; and Raymond Nelson, Collier's on-scene supervisor.
 
 
 8
 After a pre-trial conference, four counts were set for trial. Count 1 was a 42 U.S.C. Sec. 1983 claim for violation of Murphy's Fourth, Fifth and Fourteenth Amendment rights. Count 2 alleged a state cause of action for wrongful death based upon intentional, wanton, reckless or negligent conduct. Count 3 alleged infliction of emotional distress, resulting from Murphy's shooting, based on the same alternative theories of liability in Count 2. Count 4 alleged infliction of emotional distress based on the post-shooting investigation.
 
 
 9
 The trial was bifurcated. The first trial pertained to the liability of the individual police officers, except Chief Charles Ussery. In the event a verdict was returned against any of the officers, a second trial was to be set to determine damages, as well as the liability of the city and the supervisory liability of Sgt. Nelson and Chief Ussery. The appeal at issue involves the liability of the individual police officers, Nelson and Collier ("the officers").[1]
 
 
 10
 At the conclusion of all the evidence, the Murphys moved for directed verdict on Count 1--their section 1983 claim. At the same time, the officers moved for directed verdict on all counts. The court denied both motions.
 
 
 11
 After a trial that lasted over thirty days, the jury returned a verdict in favor of the officers. The Murphys then moved for a judgment notwithstanding the verdict ("JNOV") or, alternatively, a new trial pursuant to Fed.R.Civ.P. 50(b) on their section 1983 claim. The Murphys also moved for a new trial pursuant to Fed.R.Civ.P. 59(a) on their wrongful death and emotional distress claims.
 
 
 12
 The district court issued its opinion in November, 1987. Murphy v. City of Long Beach, 696 F.Supp. 500 (C.D.Cal.1987). The court did not grant the Murphys' motion for JNOV on their section 1983 claim. Rather, the court entered a JNOV based upon the officers' negligence in shooting Murphy--the Murphys' wrongful death claim.
 
 
 13
 The court also granted the Murphys' Rule 59(a) request for a new trial on the issue of negligence, conditioned upon reversal of its JNOV grant.[2] In addition, the court ordered a new trial on grounds not asserted in the Murphys' Rule 59(a) motion. See Fed.R.Civ.P. 59(d). These alternative grounds support a new trial, not only on the Murphys' negligent wrongful death claim, but also on their two emotional distress claims.[3]
 
 
 14
 The officers now appeal the court's rulings. The officers are joined in their appeal by ten other California cities as amicus curiae.
 
 JUDGMENT NOTWITHSTANDING THE VERDICT
 
 15
 The officers claim that JNOV was improper because the judgment was based upon grounds not alleged in the Murphys' motion for directed verdict. A party may only secure a JNOV "in accordance with the party's motion for directed verdict." Fed.R.Civ.P. 50(b). JNOV is improper if based upon grounds not alleged in a directed verdict because, among other reasons, the moving party has not called the "claimed deficiency in the evidence to the attention of the court and to opposing counsel at a time when the opposing party is still in a position to correct the deficit." Lifshitz v. Walter Drake & Sons, Inc., 806 F.2d 1426, 1429 (9th Cir.1986).
 
 
 16
 Here, the Murphys' motion for JNOV was based on a ground alleged in their motion for directed verdict. Both motions pertained to the Murphys' section 1983 claim. However, the district court entered a JNOV on the Murphys' negligent wrongful death claim, a ground not alleged in the Murphys' directed verdict motion.
 
 
 17
 For the same reasons a party may not seek a JNOV on grounds not alleged in their motion for directed verdict, a district court may not enter a JNOV on grounds not asserted in a party's motion for directed verdict. See Kutner Buick, Inc. v. American Motors Corp., 868 F.2d 614, 617 (3d Cir.1989). In this situation, the claimed deficiency in the evidence upon which the JNOV was based would not be called to the attention of "opposing counsel at a time when the opposing party [was] still in a position to correct the deficit." Lifshitz, 806 F.2d at 1429. Here, the Murphys' motion for directed verdict related only to their section 1983 claim. Therefore, the motion did not notify the officers that their evidence concerning negligence was allegedly insufficient.
 
 
 18
 The district court entered a JNOV because it found that the jury's verdict, that the officers were not negligent, was not supported by substantial evidence. Because this ground was not alleged in the Murphys' directed verdict motion, the district court's entry of JNOV is reversed.
 
 MOTION FOR NEW TRIAL
 
 19
 The grant of a new trial is "confided almost entirely to the exercise of discretion on the part of the trial court." Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 36, 101 S.Ct. 188, 191, 66 L.Ed.2d 193 (1980). The trial court's decision, therefore, will not be reversed absent a showing of abuse of discretion. See Hard v. Burlington N.R.R., 812 F.2d 482, 483 (9th Cir.1987).
 
 
 20
 The district court granted a new trial on the Murphys' wrongful death and emotional distress claims for a myriad of reasons.[4] The court first reasoned that the jury's verdict on negligence was contrary to the clear weight of the evidence. The court also noted its own failure to give an instruction on comparative negligence. Also, the court acknowledged that it had given an improper instruction on the Murphys' emotional distress claims.[5] Specifically, the court instructed the jury that if they found that the officers lawfully shot Murphy, then they could not find them liable for emotional distress. This instruction improperly took the Murphys' second emotional distress claim, which was based on the officers' conduct during the post-shooting investigation, away from the jury's consideration if they found that the officers were not negligent in shooting Murphy.[6] The court also emphasized that a new trial was warranted in the interest of justice.
 
 It is clear that the district judge
 
 21
 had the right, and indeed the duty, to weigh the evidence as he saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in his conscientious opinion, the verdict is contrary to the clear weight of the evidence, or ... to prevent, in the sound discretion of the trial judge, a miscarriage of justice.
 
 
 22
 Moist Cold Refrigerator Co. v. Lou Johnson Co., 249 F.2d 246, 256 (9th Cir.1957), cert. denied, 356 U.S. 968, 78 S.Ct. 1008, 2 L.Ed.2d 1074 (1958); see also Hanson v. Shell Oil Co., 541 F.2d 1352, 1359 (9th Cir.1976) (quoting Moist Cold ), cert. denied, 429 U.S. 1074, 97 S.Ct. 813, 50 L.Ed.2d 792 (1977). It is equally clear that erroneous jury instructions, as well as the failure to give adequate instructions, are also bases for a new trial. See, e.g., Rinker v. County of Napa, 831 F.2d 829, 832 (9th Cir.1987) (erroneous instructions); Cleveland v. Southern Pac. Co., 436 F.2d 77, 80-81 (9th Cir.1970) (inadequate instructions).
 
 
 23
 The trial judge is ultimately responsible for the conduct of the litigation, and is also responsible for ensuring that a party is not a victim of a miscarriage of justice. See Cheney v. Moler, 285 F.2d 116, 118-19 (10th Cir.1960) (duty of trial judge to ensure that just verdict is returned); Moist Cold, 249 F.2d at 256 (trial judge may grant new trial to avoid miscarriage of justice); Aetna Casualty & Surety Co. v. Yeatts, 122 F.2d 350, 352-55 (4th Cir.1941) (detailing the traditional discretion afforded a trial judge). The court's control over a trial is illustrated by the court's sua sponte power to grant a new trial on grounds not alleged by a party. See Fed.R.Civ.P. 59(d).
 
 
 24
 While the officers maintain that the court exceeded its authority and that its new trial order was a result of bias against the officers, they have failed to set forth sufficient evidence to support this assertion. See, e.g., Shad v. Dean Witter Reynolds, Inc., 799 F.2d 525, 531 (9th Cir.1986) (noting circumstances where judicial partiality is reversible error).
 
 
 25
 In this case, given the judge's firm conviction that the impact of these errors resulted in a miscarriage of justice, the judge did not abuse his discretion in granting the Murphys a new trial.[7]CONCLUSION
 
 
 26
 Because the court entered a judgment notwithstanding the verdict on a basis not asserted in the Murphys' directed verdict motion or their motion for judgment notwithstanding the verdict, this judgment is reversed. However, the court's conditional grant of a new trial was not an abuse of discretion, and is therefore affirmed.
 
 
 27
 REVERSED IN PART, AFFIRMED IN PART, and REMANDED.
 
 
 
 [1]
 Although Officer Rabe was a defendant in the first trial, the district court entered a directed verdict in Rabe's favor at the end of the plaintiff's case. That ruling is not at issue in this appeal
 
 
 [2]
 A district court's grant of a new trial under Fed.R.Civ.P. 59 is an interlocutory order ordinarily not immediately appealable. Roy v. Volkswagenwerk Aktiengesellshaft, 781 F.2d 670, 671 (9th Cir.1985)
 Here, however, the court ordered a new trial conditioned upon reversal of its judgment notwithstanding the verdict. Thus, the court's judgment is final and reviewable. See Air-Sea Forwarders, Inc. v. Air Asia Co., Ltd., 880 F.2d 176, 190 n. 15 (9th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 868, 107 L.Ed.2d 952 (1990).
 
 
 [3]
 In the event there is a new trial, District Judge Letts has excused himself from the proceedings
 
 
 [4]
 The district court gave five reasons for granting a new trial. Because at least three of these reasons support the court's grant of a new trial on the issue of negligence, we do not address the additional reasons. See Hanson v. Shell Oil Co., 541 F.2d 1352, 1359 (9th Cir.1976) (court's new trial order may be affirmed based on any of the stated reasons), cert. denied, 429 U.S. 1074, 97 S.Ct. 813, 50 L.Ed.2d 792 (1977)
 
 
 [5]
 This first reason was raised by the Murphys in their Rule 59(a) motion. The judge raised these last two reasons sua sponte after giving the officers notice and an opportunity to be heard at the hearing on the Murphys' JNOV and new trial motions. See Fed.R.Civ.P. 59(d) (court may grant new trial on reason not stated in a party's new trial motion, "[a]fter giving the parties notice and an opportunity to be heard on the matter.")
 
 
 [6]
 Contrary to the officers' assertion, the record reveals that the Murphys presented two distinct emotional distress claims at trial, both of which were included in their official claim to the City of Long Beach. See Cal. Govt.Code Sec. 910(c) (West Supp.1990) (A tort claim against a public entity must describe the "circumstances of the occurrence or transaction which gave rise to the claim asserted.")
 The first emotional distress claim related to Mrs. Murphy's alleged proximity to her husband's shooting. See Dillon v. Legg, 68 Cal.2d 728, 69 Cal.Rptr. 72, 80, 441 P.2d 912, 920 (1968). The second claim related to the alleged distress inflicted as a result of the post-shooting investigation.
 
 
 [7]
 The officers also argue that the Murphys' failure to object to the jury instructions prevents the court from granting, sua sponte, a new trial on this basis. See Fed.R.Civ.P. 51. The officers do not cite any circuit authority for this proposition. However, we need not decide this issue. First, it is not at all clear that Rule 51 prevents a court from granting a new trial for, among other reasons, erroneous jury instructions in order to prevent a miscarriage of justice. We note that the prime purposes of Rule 51, to bring the mistake to the court's attention and to further appellate review, are not applicable when the court, sua sponte, exercises its broad discretion to grant a new trial on these grounds. Yet, even if Rule 51 were applicable in this case, the comparative negligence and emotional distress issues were "central to the trial and justice requires review of the treatment of [these] issue[s] in the instructions as a whole." Brown v. Avemco Invest. Corp., 603 F.2d 1367, 1375 (9th Cir.1979); Pierce v. Southern Pac. Transp. Co., 823 F.2d 1366, 1371 (9th Cir.1987)