30 F.3d 139
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Celia SAGRERO, Plaintiff-Appellant,
v.
CITY OF LOS ANGELES; Officer Garcia, Defendants-Appellees.
 No. 92-56600.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 7, 1994.
Decided July 1, 1994.
 
 Before: D.W. NELSON, BEEZER, and KOZINSKI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Celia Sagrero ("Sagrero") appeals from a jury verdict in her Sec. 1983 action against Lieutenant Edward Garcia ("Garcia"), an officer of the Los Angeles Police Department ("LAPD"), seeking damages for injuries she sustained after being shot by Garcia. We have jurisdiction under 28 U.S.C. Sec. 1291, and we affirm.
 
 
 3
 I. The Jury's Determination of Total Damages.
 
 
 4
 Sagrero claims that the jury's determination that she suffered only $40,600 in actual damages is contrary to the weight of the evidence. Sagrero notes that the $40,600 figure coincides with the figure the damages expert gave for her lost wages between the time of the shooting and the time of trial, and she emphasizes that her hospital bills alone, which were not disputed by the defendants, amounted to over $300,000.
 
 
 5
 "We will not disturb the jury verdict unless, viewing the evidence in the manner most favorable to the prevailing party, we can say that the court abused its discretion." Hard v. Burlington Northern R.R., 812 F.2d 482, 486 (9th Cir.1987). When reviewing a claim that the jury's damages award was inadequate, "the question before this court is not whether the award was too low, but whether the district judge abused his discretion by denying the motion for a new trial." Berns v. Pan Amer. World Airways, Inc., 667 F.2d 826, 831 (9th Cir.1982). A litigant raising such a challenge has a "substantial burden to overcome to demonstrate the trial judge's abuse of discretion." Id.
 
 
 6
 The flaw in Sagrero's argument is that she, not the City, bore the burden at trial of establishing that her medical expenses were both reasonable and incurred as a proximate result of the shooting. The only testimony offered at trial concerning Sagrero's hospitalization was the testimony of her surgeon, Dr. Stevens. Significantly, Sagrero introduced no additional evidence, expert or otherwise, to establish that the four follow-up operations, or the infections that gave rise to them, were a proximate result of the shooting, or that the expenses listed in her hospital bills were reasonable. Dr. Stevens had no incentive to volunteer that any portion of Sagrero's medical expenses were caused by physician or hospital negligence, and the jury could have discounted his testimony. Cf. Lutz v. United States, 685 F.2d 1178, 1186 (9th Cir.1982) (noting that an allegedly inadequate damages award should not be overturned if the trier of fact's determination turned on a credibility judgment). Although it is true that the defense physicians focused on Sagrero's present condition rather than her initial hospitalization, the burden was on Sagrero to demonstrate affirmatively that the expenses arose out of the shooting. Her failure to do so below cannot be redressed on appeal.
 
 
 7
 Accordingly, we conclude that the district court did not abuse its discretion in denying Sagrero's motion for a new trial based on her claim that the damages award was inadequate.
 
 
 8
 II. The Jury Instruction on Contributory Negligence.
 
 
 9
 In its instructions to the jury, the district court explained the concept of contributory negligence, but did not instruct the jury that the defense had the burden of proving contributory negligence by a preponderance of the evidence. The instruction read as follows:
 
 
 10
 Contributory negligence is negligence on the part of a plaintiff which, combining with the negligence of a defendant, contributes as a legal cause in bringing about the injury. Contributory negligence, if any, on the part of the plaintiff does not bar a recovery by the plaintiff against the defendant, but the total amount of damages to which the plaintiff would otherwise be entitled shall be reduced in proportion to the amount of negligence attributable to the plaintiff.
 
 
 11
 Although Sagrero did not propose an alternative instruction or object to the instruction that was given, she claims on appeal that the district court's error warrants reversal. We conclude that Sagrero waived her right to assert this claim.
 
 
 12
 "No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Fed.R.Civ.P. 51. "The purpose of the Rule is to give the court a chance to correct an erroneous instruction on the law." Richfield Oil Corp. v. Karseal Corp., 271 F.2d 709, 722 (9th Cir.1959), cert. denied, 361 U.S. 961 (1960). "This court has enjoyed a reputation as the strictest enforcer of Rule 51; we have declared that there is no 'plain error' exception in civil cases in this circuit." Hammer v. Gross, 932 F.2d 842, 847 (9th Cir.) (citations omitted), cert. denied, 112 S.Ct. 582 (1991).
 
 
 13
 Sagrero claims that despite our strict interpretation of Rule 51, the court's opinions in Pierce v. Southern Pacific Transp. Co., 823 F.2d 1366 (9th Cir.1987), and Glover v. BIC Corp., 6 F.3d 1318 (9th Cir.1993), show that we are willing to make exceptions in extraordinary circumstances. Pierce, however, is distinguishable in that the appellant did not directly challenge on appeal the trial court's jury instructions, and in that the defendant's challenge concerned the trial court's failure to consider a potentially outcome-determinative issue of substantive federal law. See 823 F.2d at 1371. To the extent that there is language in Pierce suggesting that the Ninth Circuit has abandoned its strict reading of Rule 51, it is dicta.[1]
 
 
 14
 Glover does not help Sagrero. In Glover, the court allowed the defendant to challenge the sufficiency of a causation instruction even though the defendant had not objected to the instruction at trial. The Glover court, however, emphasized that the defendant had offered a proposed causation instruction that correctly stated the law, providing the trial court with an opportunity to correct its error before the instructions went to the jury. 6 F.3d at 1327. The trial court also expressly noted on the record that each party would have the right to challenge any instruction not given. Id. at 1326. Glover thus merely applied the one recognized exception to the Ninth Circuit's strict reading of Rule 51: "Where the district court is aware of a party's concerns with an instruction, and further objection would be unavailing, we will not require a futile formal objection." Id. (quoting McGonigle v. Combs, 968 F.2d 810, 823 (9th Cir.), cert. dismissed, 113 S.Ct. 399 (1992). Because Sagrero has not shown that the district court was aware of her concern, let alone that an objection would have been unavailing, her claim does not fall within the "futility" exception noted in Glover.
 
 
 15
 III. The Jury's Allocation of Fault.
 
 
 16
 Sagrero claims that the jury's determination that Garcia was only 15.25% responsible for her injuries is contrary to the weight of the evidence, and that, accordingly, the district court should have granted her motion for a new trial. "We will not disturb the jury verdict unless, viewing the evidence in the manner most favorable to the prevailing party, we can say that the court abused its discretion." Hard v. Burlington Northern R.R., 812 F.2d 482, 486 (9th Cir.1987). This case involved a substantial amount of directly conflicting testimony, and, although it is true that a rational jury could have come to a different conclusion, substantial evidence supports the jury's apportionment of fault.
 
 
 17
 As the defense points out, the jury may have been swayed by the fact that Sagrero admitted that she had fired her gun into the air on the streets of Hollywood more than once without thinking of where the bullets might land. This reckless behavior led police to assume that a shooting was in progress, and made them more likely to suspect that they would be confronting armed and dangerous suspects. The jury might have felt that Sagrero's acts instigated the confusion, making her primarily responsible for the consequences.
 
 
 18
 In addition, the defense attacked Sagrero's credibility concerning the extent of her disability. As a result, the jury might have discounted her claim that she received conflicting commands about whether to raise her hands or drop her gun. The testimony of Sergeant Willis supported Sagrero on this point, but the jury might have discounted his testimony as well. Willis changed his story several days after the shooting, and a police expert testified that Willis may not have performed properly at the time of the shooting himself.
 
 
 19
 As to the 11.25% of the fault attributed to "other persons," the jury could have believed that Amador (Sagrero's son), who waived down a police car with a .22 caliber gun in hand, contributed to the confusion that led to the shooting. The jury also conceivably could have concluded that Sergeant Willis, who was present throughout the encounter, was partially responsible.
 
 
 20
 We conclude that the district court did not abuse its discretion in denying Sagrero's motion for a new trial on this ground.
 
 
 21
 IV. Newly Discovered Evidence.
 
 
 22
 Sagrero next claims that, at trial, defense counsel sought to introduce a document that it previously had not shown to her. Although Sagrero succeeded in having the document kept out of evidence at trial, she argues that her counsel was able to get a "brief glance" at the document in the process, and now is convinced that the document would have assisted her case.
 
 
 23
 In order to establish a right to a new trial on the basis of newly discovered evidence, "the movant must show the evidence (1) existed at the time of the trial, (2) could not have been discovered through due diligence, and (3) was 'of such magnitude that production of it earlier would have been likely to change the disposition of the case.' " Jones v. Aero/Chem Corp., 921 F.2d 875, 878 (9th Cir.1990) (citation omitted). "We review the district court's determination under this standard for abuse of discretion." Id.
 
 
 24
 Because Sagrero's claim is based on her attorney's "brief glance" at the document during the trial, she clearly had an opportunity to pursue the document at the time of the trial. Her vague allegation that the document "would have ... assisted [her] case," moreover, falls far short of demonstrating that production of the document at trial likely would have led to a different verdict. Sagrero's claim is entirely without merit.
 
 
 25
 V. Evidence of Garcia's Knowledge of Different "Take-Down" Methods.
 
 
 26
 We find no abuse of discretion in the district court's evidentiary rulings. As the City emphasizes, Garcia's demonstration of the take-down methods illustrated that the first command in each procedure was to have the suspect raise his or her hands. The demonstrations, together with the oral descriptions, thus tended to show that Garcia was familiar with the prescribed techniques, and made it somewhat more probable that Garcia's instincts would have been to call for Sagrero to raise her hands rather than to drop the gun. Cf. Fed.R.Evid. 401 (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). Although the probative value of the demonstrations was not particularly great, neither was its prejudicial effect. In light of the extensive opportunities the district court gave both sides to present their cases, we cannot say that the court abused its discretion in allowing Garcia to demonstrate the take-down methods. United States v. Gilley, 836 F.2d 1206, 1213 (9th Cir.1988) (stating that determinations of the relevance of evidence are committed to the district court's sound discretion).
 
 
 27
 VI. The Effect of the Los Angeles Riots on the Jury.
 
 
 28
 In the midst of the trial, civil unrest broke out in Los Angeles in the wake of the verdict in the first Rodney King trial. On the recommendation of plaintiff's counsel, the court agreed to question each juror separately in chambers to determine whether the unrest was having any prejudicial impact. The court and counsel questioned each of the eight jurors in detail, and all of the jurors firmly stated that they would remain impartial.
 
 
 29
 "It has long been established that a litigant 'is entitled to a fair trial but not a perfect one.' " Hard v. Burlington Northern R.R. Co., 870 F.2d 1454, 1460 (9th Cir.1989) (quoting Brown v. United States, 411 U.S. 223, 231-32 (1973)). Even where there is evidence of outside influences, "[i]t is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." Dobbert v. Florida, 432 U.S. 282, 302 (1977). This court reviews for abuse of discretion a district court's determination that a verdict was not tainted by outside influences. See Hard, 870 F.2d at 1461-62.
 
 
 30
 Although Sagrero emphasizes that one of the jurors mentioned to the court that his daughter's boyfriend was a fireman, and that the juror was bothered by the fact that some of the violence was being directed against firemen, the juror explained that this perception would not influence his decision because "[t]hat stuff ... has nothing to do with this case." Moreover, while all of the jurors admitted at some level that they were concerned about the unrest, none of the jurors said anything indicative of actual prejudice. Cf. Irvin v. Dowd, 366 U.S. 717, 723 (1961) (holding that even where juror exposure to pretrial publicity can be shown, the litigant must still demonstrate that actual prejudice resulted). Sagrero offers nothing more than speculation that the unrest would have biased the jurors against her. While there may be some plausibility to these speculations, one could also speculate that the jurors might have felt that King had been wronged and that they should strive to even the score by granting a big award to Sagrero.
 
 
 31
 Because the court responded to Sagrero's concern by interviewing each juror, and because Sagrero has not introduced sufficient credible evidence that juror bias, prejudice, or passion actually affected the verdict, we conclude that the district court was within its discretion in denying her motion for a mistrial.
 
 
 32
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The broad language in Brown v. Avemco Invest. Corp., 603 F.2d 1367 (9th Cir.1979), referred to by Sagrero and quoted in Pierce, is also dicta. In Brown, the court held that because the defendant had made the trial court fully aware of its position and had proposed its own instruction, an objection would have been a "pointless formality." Id. at 1371-73. Brown is thus an example of the "futility" exception, the sole exception to a strict reading of Rule 51 recognized in this circuit. See discussion, infra. Sagrero's reliance on Murphy v. City of Long Beach, 914 F.2d 183 (9th Cir.1990), a recent opinion citing both Pierce and Brown, is similarly misplaced. In Murphy, the district court sua sponte granted a new trial for five reasons, one of which was the court's recognition that it had failed to instruct the jury on comparative negligence. On appeal, the appellants claimed that the grant of a new trial was improper on this ground because the appellee had not objected to the jury instructions. In a footnote, the court rejected the appellant's argument, stating: "[W]e need not decide this issue.... We note that the prime purposes of Rule 51, to bring the mistake to the court's attention and to further appellate review, are not applicable when the court, sua sponte, exercises its broad discretion to grant a new trial on these grounds." Murphy, 914 F.2d at 187 n. 7. Like the other cases relied on by Sagrero, Murphy is distinguishable on its facts