46 F.3d 1138
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
ASSOCIATED DIESEL SERVICE & EQUIPMENT COMPANY,
Plaintiff-Counter-Defendant-Appellant,
v.
TEREX CORPORATION, Defendant-Counter-Claimant-Appellee.
ASSOCIATED DIESEL SERVICE & EQUIPMENT COMPANY,
Plaintiff-Counter-Defendant-Appellee,
v.
TEREX CORPORATION, Defendant-Counter-Claimant-Appellant.
 Nos. 93-55410, 93-55469.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 1, 1994.
Decided Jan. 20, 1995.
 
 Before: BROWNING, FARRIS, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 This appeal and cross-appeal arise from Terex Corporation's ("Terex") termination of its Dealer Sales and Service Agreement with Associated Diesel Service & Equipment Company ("Associated"). After the termination, Associated filed this action against Terex for fraud and breach of contract. Terex counterclaimed, alleging that Associated never paid $159,380 for parts ordered and received. At the close of the evidence in a jury trial, the court granted Terex's motion for judgment on its counterclaim under Federal Rule of Civil Procedure 50(a)(1). The jury awarded Associated approximately $1.68 million on the fraud claim and $415,800 on the contract claim.
 
 
 3
 Terex moved for judgment as a matter of law or, in the alternative, for a new trial on liability and damages. The court granted a new trial on damages subject to a $415,800 remittitur.
 
 
 4
 Associated rejected the remittitur. The sole issue on retrial was compensatory damages for fraud (the contract theory was not retried); the jury was told to assume Terex had committed fraud. The jury awarded Associated damages in the amount of $180,000. The court offset Associated's award against Terex's award on the counterclaim, denying interest to Terex.
 
 
 5
 1. Whether the District Court Abused Its Discretion in Ordering a New Trial on Damages
 
 
 6
 "The grant of a new trial is 'confided almost entirely to the exercise of discretion on the part of the trial court.' " Murphy v. City of Long Beach, 914 F.2d at 186 (quoting Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 36 (1980)). The trial court's decision should not be reversed unless there is an abuse of discretion. Id. Under the abuse of discretion standard, we may not reverse unless we have a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors. United States v. Plainbull, 957 F.2d 724, 725 (9th Cir.1992) (reviewing dismissal on abstention grounds); Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec, 854 F.2d 1538, 1546 (9th Cir.1988) (per curiam) (reviewing imposition of discovery sanctions). We cannot simply substitute our judgment for that of the lower court. United States v. Egbuniwe, 969 F.2d 757, 761 (9th Cir.1992).
 
 
 7
 A new trial should be ordered where the verdict is contrary to the clear weight of the evidence or to prevent a miscarriage of justice. Moist Cold Refrigerator Co. v. Lou Johnson Co., 249 F.2d 246, 256 (9th Cir.1957), cert. denied, 356 U.S. 968 (1958). A new trial may be granted where there are erroneous or inadequate jury instructions. Murphy v. City of Long Beach, 914 F.2d 183, 187 (9th Cir.1990) (citing Cleveland v. Southern Pac. Co., 436 F.2d 77, 80-81 (9th Cir.1970)). These are separate and distinct grounds for granting a new trial. See id.
 
 
 8
 The district court recognized that there are various grounds for ordering a new trial when it said a new trial "may ... be granted apart from this matter of contrary to the clear weight of the evidence. A new trial may also be granted if there was some material error of law at the trial." Appellant's Excerpt of Record ("ER"), tab "7/9/92 Hearing," at 9-10.
 
 
 9
 After setting $415,800 as the damages which plaintiff could accept to avoid a new trial, the court said:
 
 
 10
 I have adopted that figure after considerable thought. Its rationale is this. In this particular case, on these particular facts, in my view, the measure of fraud damages should be the same as the measure of contract damages. It's worthwhile, counsel, for us to go back over the instructions that I gave this jury on the measure of damages on each of the two theories. They were agreed instructions.
 
 
 11
 On fraud, the agreed instruction was really wide open, and in retrospect it was of minimal value in terms of guidance. The instruction in essence said, "That the jury should award"--and I'm quoting now--"all damages legally caused by the fraud." Then we close quote there.
 
 
 12
 That particular language comes from BAJI 12.57. BAJI contains a further elaboration and guidance for fraud damages, but neither of you asked me to give it. It is found in a later paragraph in that same BAJI instruction, 12.57. The later paragraph can be summarized this way. "The measure of damages is the benefit of the bargain."
 
 
 13
 Well, all lawyers in California recognize benefit of the bargain as a contract measure of damages also, but as the second or later paragraph of BAJI shows, in California it is also approved as a measure of damages for fraud in certain kinds of cases.
 
 
 14
 Our case, in my view, is one of the types of cases for which it is an appropriate measure.
 
 
 15
 Now, when I instructed the jury on contract damages, the agreed instruction told the jury that plaintiff was to obtain the benefit of expected performance of the contract that was breached. As best I can make out, that is simply synonymous for saying the plaintiff was to have the benefit of the bargain.
 
 
 16
 For that reason I have adopted the verdict figure reached by the jury on contract, as to which in my view there was ample supporting evidence, as the remittitur figure for the fraud verdict.
 
 
 17
 ER, tab 7/9/92 Hearing, at 12-13.
 
 
 18
 An examination of the damage theories and the instructions given show that the jury must have been confused when it awarded such different amounts under the contract and fraud theories. In responding to the court's statement that "the measure of [fraud] damages should [have been] the same as the measure of contract damages," appellant's counsel said he was mystified that the jury did not award lost profits under the contract theory. ER, tab 7/9/92 Hearing, at 16.
 
 
 19
 The court's decision that the instruction on fraud damages was inadequate, when faced with such disparate awards and an approved California jury instruction allowing benefit of the bargain damages for fraud, was not an abuse of discretion.
 
 
 20
 2. Whether the Court Abused Its Discretion in Setting the Amount of the Remittitur
 
 
 21
 Associated asks us to set a new amount of remittitur. Terex argues that the amount of the remittitur is not subject to appellate review.
 
 
 22
 If Associated had accepted the remittitur, it could not have appealed the order for a new trial. Donovan v. Penn Shipping Co., 429 U.S. 648, 650 (1977); Denholm v. Houghton Mifflin Co., 912 F.2d 357, 359 (9th Cir.1990), cert. denied, 501 U.S. 1212 (1991). But where Associated rejected the remittitur in favor of a new trial, it is established that an order for a new trial is interlocutory and cannot be immediately appealed. Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 34 (1980) (per curiam); DePinto v. Provident Sec. Life Ins. Co., 323 F.2d 826, 838 (9th Cir.1963), cert. denied, 376 U.S. 950 (1964). Thus, questions involving whether a new trial should have been ordered are appealable after the second trial. Cf. DePinto at 838-39 (the grant of a new trial is reviewable after the second trial).
 
 
 23
 There is a difference of opinion on the standard by which a court should be guided in determining the amount of a remittitur. 11 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure Sec. 2815, at 104 (1973 & Supp.1994). Some courts have held it should be set at the minimum amount the jury could have awarded; some courts have set it at the highest amount; and others have set the remittitur at whatever the court itself thought the jury should have allowed. See id. (citing cases). Arguably, the $415,800 could be any one of these amounts. In any case, it was the amount the jury awarded for a breach of contract with an instruction for "benefit of the bargain." Because neither California courts nor this circuit have stated which amount is proper, the district court could not have abused its discretion in setting the amount it did. "Where a matter is committed to discretion, it cannot be said that a litigant's right to a particular result is "clear and indisputable." Allied Chem., 449 U.S. at 36, (quoting Will v. Calvert Fire Ins. Co., 437 U.S. 655, 665-66 (1978) (plurality opinion)).
 
 
 24
 3. Whether Associated May Now Elect the Contract Remedy
 
 
 25
 Associated argues that because it lacks resources for any further trials, and because a key witness is dead, if we should decide not to reinstate the $1.68 million damage award for fraud, it has the right to elect the contract remedy at the end of this appeal.
 
 
 26
 Neither common sense nor California law requires us to permit such an election. Having elected to retry only on the fraud theory and abandoning the contract remedy at that point, Associated may not undo the choices it made. The prejudice to Terex is obvious: it would have to pay $235,800 more than the second jury awarded simply because Associated did not like the choice it made. The California Court of Appeals has rejected a similar request by parties after the fact: "By their conduct, the [appellants] elected to pursue a tort remedy and waived their right to pursue the ... contract remedy." Helm v. K.O.G. Alarm Co., Inc., 4 Cal.App.4th 194, 204 n. 10, 5 Cal.Rptr.2d 615, 620 n. 10 (Cal.Ct.App.1992).
 
 4. Associated's Remaining Issues
 
 27
 Associated "reluctantly requests" that the judgment be affirmed if we deny its requests 1) that the $1.68 million verdict be permitted to stand, 2) alternatively that we set a remittitur in an amount consistent with the maximum amount the evidence could sustain, 3) as a further alternative that it have judgment for the contract verdict less the setoff.
 
 
 28
 Since in no event does Associated seek a third trial, we do not decide the issues presented by Associated's arguments that there were errors in the second trial.
 
 
 29
 5. Terex's Claim for Prejudgment Interest on the Counterclaim
 
 
 30
 The sole issue upon which Terex asks us to reverse, in the context of a setoff, concerns whether it is entitled to prejudgment interest on its counterclaim against Associated for $159,380 for parts. After the second trial the court reversed its earlier order granting Terex interest on this amount.
 
 
 31
 Under California law, setoffs are governed by principles of equity. See, e.g., Jess v. Herrmann, 26 Cal.3d 131, 142, 161 Cal.Rptr. 87, 93, 604 P.2d 208, 214 (1979). We cannot say that there was any error in the district court's reliance on Burgermeister Brewing Corp. v. Bowman, 227 Cal.App.2d 274, 285-86, 38 Cal.Rptr. 597, 604 (Cal.Ct.App.1964), when, after reconsideration of the issue, the court decided that Terex was not entitled to prejudgment interest where a setoff was involved.
 
 
 32
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3