91 F.3d 158
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Jim ZENDER, doing business as "Z" Tomato Company, Inc.,
Plaintiff-Appellant,
v.
VLASIC FOODS, INC., Defendant-Appellee.
 No. 94-56499.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 15, 1995.
Decided July 19, 1996.
As Amended on Denial of Rehearing Aug. 29, 1996.
 
 Before: FLETCHER, CANBY, and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Jim Zender, the plaintiff in this diversity case, appeals from decisions of the district court, after the return of a jury verdict in his favor, granting judgment against him as a matter of law on his claims for breach and bad-faith denial of contract and ordering a new trial on his tort claims for intentional interference with economic relationship, intentional misrepresentation, and concealment of material facts. In addition, he appeals from the district court's subsequent grant of summary judgment to the defendant on the tort claims on which a new trial was granted. We need not set forth the factual background and procedural history of this appeal in detail because the parties are familiar with them. We have jurisdiction under 28 U.S.C. § 1291. We affirm in part and reverse in part.
 
 Judgment As A Matter of Law
 
 3
 We review de novo the district court's grant of judgment as a matter of law on Zender's claims for breach of contract and bad-faith denial of contract: the grant was proper if the evidence, construed in the light most favorable to the nonmovant, permits only one reasonable conclusion and that conclusion is contrary to the jury's. Vollrath Co. v. Sammi Corp., 9 F.3d 1455, 1460 (9th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 2163 (1994).
 
 I. Bad-Faith Denial of Contract
 
 4
 We affirm the judgment dismissing the claim for bad-faith denial of contract sounding in tort because the Supreme Court of California, during the pendency of this appeal, overruled Seaman's Direct Buying Service, Inc. v. Standard Oil Co., 686 P.2d 1158 (Cal.1984) and has now adopted "a general rule precluding tort recovery for noninsurance contract breach, at least in the absence of violation of an independent duty arising from principles of tort law ... other than the bad faith denial of the existence of, or liability under, the breached contract". Freeman & Mills, Inc. v. Belcher Oil Co., 900 P.2d 669, 679-80 (Cal.1995) (internal quotation marks and citation omitted). The remedy, if any, is for breach of contract.
 
 II. Breach of Contract
 A. Statute of Frauds
 
 5
 California Civil Code § 1624(1) requires a writing for any "agreement that by its terms is not to be performed within a year from the making thereof". As Zender alleges that the oral contract was to provide growing services for two-and-a-half years, the alleged oral contract falls squarely within the statute and was required to be in writing.[1]
 
 
 6
 Zender, however, argues that under California law Vlasic is estopped from relying on the statute of frauds to defeat the oral contract. He relies on the estoppel doctrine announced by the California Supreme Court in Monarco v. Lo Greco, 220 P.2d 737 (1950), which held that a defendant is estopped from asserting the statute of frauds when "unconscionable injury ... would result from denying enforcement of the contract after one party has been induced by the other seriously to change his position in reliance on the contract or ... unjust enrichment ... would result if a party who has received the benefits of the other's performance were allowed to rely upon the statute". Id., at 739-40 (citations omitted). The California Supreme Court reaffirmed this doctrine in 1987 in Phillippe v. Shapell Industries, Inc., 743 P.2d 1279, 1284-85 ("[E]stoppel is proper to avoid unconscionable injury or unjust enrichment that would result from refusal to enforce an oral promise."), cert. denied, 486 U.S. 1011 (1988).
 
 
 7
 Zender has shown sufficient change in his position to qualify for estoppel on the basis of unconscionable injury. His signing of the 30-month lease on the Tiscornia Farm and of the loan with Agri-Credit Acceptance for sprinkling equipment represent a substantial change in his position. See, e.g., Wilk v. Vencill, 180 P.2d 351 (Cal.1947) (plaintiffs had done some work on real property and foregone chance to buy comparable house before defendants refused to carry through on oral contract of sale); McGirr v. Gulf Oil Corp., 115 Cal.Rptr. 902 (Cal.Ct.App.1974) (plaintiff's deposit of $750, investment of $3,000 for inventory, and 90-day minimum commitment to operate a service station sufficient to estop defendant from relying on the statute).
 
 
 8
 We reject Vlasic's argument that the fact that Zender's change of position was induced by, or made in reliance on, conduct only by Schwab, Vlasic's agent, and not by Vlasic, makes a difference. Vlasic relies on Monte Carlo Motors, Inc. v. Volkswagenwerk, G.M.B.H., 1 Cal.Rptr. 920 (Cal.Ct.App.1960) ("[An] agent by his conduct alone cannot estop his principal [to assert the statute of frauds] and the estoppel can only arise out of reasonable reliance upon some conduct of the principal himself"). Although much of the conduct on which Zender relied was conduct by Schwab, Zender also relied on Schneider, Vlasic's director of U.S. agriculture operations, who visited Blythe in December 1990. He did not tell Zender that Vlasic was at that point 95% certain that it would not continue to grow cucumbers in Blythe after the Spring 1991 crop. Also, Schneider testified that Schwab had authority to bind Vlasic to contracts and to make representations for Vlasic. Schwab was Vlasic's Western Regional Agricultural Manager, he routinely negotiated all of Vlasic's agreements with Zender, and he signed those contracts on behalf of Vlasic. Schwab's authority from Vlasic was far greater than was the authority of Volkswagen's representative in Monte Carlo Motors, and was sufficient to bind Vlasic to his representations and conduct. Therefore, Vlasic is estopped from asserting the statute of frauds because of Zender's detrimental reliance on Schwab's and Schneider's conduct.
 
 B. "Equal Dignities" Rule
 
 9
 California Civil Code § 2309 provides that an agent's "authority to enter into a contract required by law to be in writing can only be given by an instrument in writing". In its ruling on Vlasic's motion for judgment as a matter of law, the district court found that this provision, known as the "equal dignities" rule, barred Zender's action. Because the oral contract alleged by Zender is within the statute of frauds, under § 2309, Schwab required written authority to enter into this contract. The fact that Vlasic is estopped from asserting the statute of frauds does not prevent it from raising the question of Schwab's authority, since California case law treats the two questions independently. See Kerner v. Hughes Tool Co., 128 Cal.Rptr. 839, 845 (Cal.Ct.App.1976); McGirr, 115 Cal.Rptr. at 905-09; Monte Carlo Motors, 1 Cal.Rptr. at 922.
 
 
 10
 However, the district court's grant of judgment as a matter of law on this basis was improper because Vlasic did not assert the "equal dignities" rule in its pre-verdict motion for judgment as a matter of law. "[A] district court may not enter a JNOV on grounds not asserted in a party's motion for directed verdict". Murphy v. City of Long Beach, 914 F.2d 183, 186 (9th Cir.1990) (citing Kutner Buick, Inc. v. American Motors Corp., 868 F.2d 614 (3d Cir.1989)). See also Fed.R.Civ.P. 50(b), Advisory Committee Notes on the 1991 Amendments ("A post-trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion.") (citing Kutner ). Vlasic raised the rule for the first time in its reply papers in support of its post-verdict motion for judgment as a matter of law. The pre-verdict motion, which was made orally, did not mention the rule, nor did Vlasic's pre-trial motion for summary judgment, which Vlasic appears to have incorporated by reference in its oral, pre-verdict JMOL motion. Indeed, Vlasic's counsel volunteered in the December 3, 1993 hearing on its post-verdict motion that the issue "hasn't been briefed before, unfortunately". Therefore, the post-trial grant of JMOL on the basis of the "equal dignities" rule was improper.
 
 C. Parol Evidence Rule
 
 11
 Even if the statute of frauds and "equal dignities" rule are no bar, Vlasic also successfully challenged below the use of parol evidence to prove the existence and terms of the contract. The applicability of the parol evidence rule under California law is a matter of law for the court, Cal.Civ.Pro. § 1856(d), and involves a two-step inquiry. First, the court must ask whether "the writing [was] intended to be an integration, i.e., a complete and final expression of the parties' agreement, precluding any evidence of collateral agreements". Banco do Brasil, S.A. v. Latian, Inc., 285 Cal.Rptr. 870, 886 (Cal.Ct.App.1991), quoting Gerdlund v. Electronic Dispensers International, 235 Cal.Rptr. 279, 282 (Cal.Ct.App.1987). If it was, the court must then decide whether "the agreement [is] susceptible of the meaning contended for by the party offering the evidence". Banco do Brasil, 285 Cal.Rptr. at 886. If it is, then the parol evidence is admissible.
 
 1. Integration
 
 12
 The question of whether the five Spring 1991 crop season agreements constitute an integration[2] of all Zender's and Vlasic's agreements is a question of "whether the parties intended the written instrument[s] to serve as the exclusive embodiment of their agreement", and is to be determined by consideration of all of the circumstances. Id. at 886.
 
 
 13
 California courts have used a four-pronged inquiry to answer this question. First, it must be determined whether "the written agreement appear[s] on its face to be a complete agreement". Id. at 887. The appearance of an "integration clause" in the contract "may well be conclusive on the issue of integration". Id. at 886; see also Blumenfeld v. R.H. Macy & Co., 154 Cal.Rptr. 652 (Cal.Ct.App.1979). Here, four of the five Spring 1991 crop contracts contain integration clauses. Only the agreement on management services contains no integration clause.
 
 
 14
 The second question is whether "the alleged oral agreement directly contradict[s] the written instrument". Id. Three of the five agreements expressly provided that they terminated on 31 July 1991. The district court held that this termination date directly contradicts the two-and-one-half-year term of the alleged oral agreement. However, the "Agreement of Production and Services" states that Vlasic agrees to reimburse Zender for "the total lease cost of the approved parcel of land leased" per the "[a]greement attached". No agreement was attached, but the parties agree that the lease referred to is the two-and-one-half year lease on the Tiscornia Farm. Thus, the two-and-one-half year term of the alleged oral agreement does not directly contradict the term of the written agreements.
 
 
 15
 The third question is whether "it [can] be said that the oral agreement might naturally have been made as a separate agreement". Banco do Brasil, 285 Cal.Rptr. at 886. The form and timing of the Spring 1991 contracts are entirely consistent with the practice of Zender and Vlasic in previous years in contracting for individual growing seasons and then renewing their contracts year after year without question. The long-term contract Zender alleges would indeed be perfectly "natural" as a separate agreement: the parties surely could have agreed separately to a two-and-one-half-year arrangement regarding Zender's services and expenses for land, irrigation, and so forth, while agreeing that the terms for "season specific" issues would be negotiated for each season.
 
 
 16
 The fourth question for the court is whether "evidence of the oral agreement [would] be likely to mislead the trier of fact". Id. The California Supreme Court's discussion of "when the fact finder is likely to be misled" in Masterson v. Sine, 436 P.2d 561, 564-65 (1968), suggests that this prong of the inquiry is essentially the same as the previous prong: "The rule must ... be based on the credibility of the evidence. One such standard ... permits proof of a collateral agreement if it 'is such an agreement as might naturally be made as a separate agreement ...' ". Id. (citations omitted) (emphasis in Masterson ).
 
 
 17
 Although the question is a close one, we hold that the Spring 1991 growing season agreements were an integration of the parties' prior negotiations and agreements, given the strong weight to be given to the express integration clauses in four of the five contracts. We therefore proceed to the next step in the parol-evidence analysis, since California law bars the admission of the parol evidence only if the integrated agreement is not susceptible of the meaning contended for by Zender.
 
 
 18
 2. Contradiction or Interpretation?
 
 
 19
 Since the Spring 1991 contracts constitute an integration of the parties' agreements, we must determine whether the alleged oral agreement contradicts the terms of those contracts, and thus whether evidence of it is barred by the parol evidence rule, or whether the evidence is admissible to explain or interpret the language of the integration. The difference between the term of the Tiscornia Farm lease (which was to be attached to the "Agreement of Production and Services") and the term of the agreements between Zender and Vlasic renders the integrated agreement between Zender and Vlasic ambiguous. Therefore, the evidence of the oral agreement is admissible to explain the ambiguity and the district court erred in granting judgment as a matter of law on the ground that the parol evidence rule barred all evidence in support of the jury's finding of breach of contract. It was not error to admit the evidence, evidence which is sufficient to sustain the jury's verdict. We conclude the judgment as a matter of law must be reversed and the jury's verdict on liability for the claim for breach of contract must be reinstated.
 
 New Trial of Tort Claims
 
 20
 We review the grant of a motion for a new trial pursuant to Rule 59 for an abuse of discretion. Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 278 (1989).
 
 
 21
 The grant of a new trial is reversed as to compensatory damages. The jury found, by special verdict interrogatory, that Zender had sustained damages which were proximately caused by Vlasic and that the damages amounted to $423,375.00. The jury then found by supplemental interrogatory that the evidence of each element of bad-faith denial of contract, intentional interference with economic advantage, intentional misrepresentation, and concealment of material facts was clear and convincing. Finally, in the interrogatory on punitive damages, the jury found that "an officer, director or managing agent of the defendant committed, authorized or ratified the acts which [it] found to be fraud" and awarded $891,000.00 in punitive damages. As to compensatory damages, Zender's counsel expressly told the jury in summation that the damages for Zender's breach-of-contract claim and for his tort claims were the same and that the jury should not award duplicative damages. The jury instructions reflect the same understanding; the court described the amount of damages that the jury must award if it found liability on the tort claims as those that reflected "the benefit of the bargain", which is the same measure as for contract damages. Therefore, our affirmance of the district court's judgment as a matter of law vacating the jury's verdict on the claim for bad-faith denial of contract does not affect the jury's computation of compensatory damages.
 
 
 22
 The grant of the new trial on Zender's remaining tort claims must be affirmed. As to punitive damages, our affirmance of the judgment as a matter of law on the bad-faith-denial claim makes it, as the district court said, "impossible to know ... what portion of ... damages [the jury] intended to allocate" to that claim and what portion it intended to allocate to the other claims. Therefore, a new trial must be granted to determine the amount of punitive damages. Both federal and California law, however, generally require that the same jury determine both liability for, and the amount of, punitive damages because those questions are so interwoven. See United Air LInes, Inc. v. Wiener, 286 F.2d 302, 306 (9th Cir. 1961), cert denied, 366 U.S. 924 (1962); Cal. Clv. Code § 3295(d); see also Gasoline Products Co. v. Champlin Refining Co., 283 U.S. 494 (1931). Therefore, the district court's grant of a new trial must be affirmed both as to liability for Zender's remaining tort claims[3] and as to the extent of punitive damages, if any, to be awarded.
 
 CONCLUSION
 
 23
 We affirm the grant of judgment as a matter of law denying Zender's claim for bad-faith denial of contract, but vacate the grant of judgment as a matter of law denying his claim for breach of contract and reinstate the verdict of liability on that claim. We affirm the grant of a new trial on liability and punitive damages, if any, on Zender's remaining tort claims and reverse the district court's grant of summary judgment on those claims. We reverse the grant of a new trial on the jury's award of compensatory damages and reinstate that award.
 
 
 24
 AFFIRMED IN PART, REVERSED IN PART.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Because the contract is governed by California's general statute of frauds, we decline to reach the question of whether the alleged oral contract in this case was a contract for goods within the meaning of the statute-of-frauds provision of California Commercial Code § 2201 (Uniform Commercial Code § 2-201) applicable to any "contract for the sale of goods for the price of $500 or more". Even if the alleged oral contract is within § 2201, it appears that Zender's argument that Vlasic is estopped from asserting the statute should be evaluated under the same analysis used to analyze the claim that Vlasic is estopped from asserting the statute of frauds contained in Civil Code § 1624. Allied Grape Growers v. Bronco Wine Co., 249 Cal.Rptr. 872 (Cal.Ct.App.1988) (holding as a matter of first impression that California law on estoppel to assert the Statute of Frauds contained in California Civil Code § 1624 also applied to Commercial Code § 2201)
 
 
 [2]
 "Several contracts relating to the same matters, between the same parties, and made parts of substantially one transaction, are to be taken together." Cal.Civ.Code § 1642. The five Spring 1991 crop agreements fall within the scope of this section
 
 
 [3]
 The district court eventually granted summary judgment on the claims on which a new trial had been ordered on the ground that the evidence remaining after the application of the parol evidence rule did not suffice to raise genuine issues of material fact as to Zender's other claims. Our ruling that the parol evidence rule does not bar the admission of evidence of the oral agreement between Zender and Vlasic requires reversal of that judgment as well